2015 IL App (2d) 140267
No. 2-14-0267
Opinion filed June 5, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 12-DT-386 |
| COREY E. OLSEN, | ) ) ) | Honorable Thomas L. Doherty, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals from an order of the circuit court of De Kalb County granting the motion of defendant, Corey E. Olsen, to suppress evidence as a discovery sanction. For the reasons that follow, we reverse and remand.

¶ 2                                  I. BACKGROUND

¶ 3    Defendant was arrested on August 12, 2012, and charged with two counts of driving under the influence (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2012)).

¶ 4    On September 5, 2013, defendant filed a motion for sanctions, based on the arresting officer's alleged failure to comply with section 30(c) of the State Police Act (Act) (20 ILCS 2610/30(c) (West 2012)), which provides that "in-car video camera recording equipment ***

shall record activities outside a patrol vehicle whenever (i) an officer assigned a patrol vehicle is conducting an enforcement stop; *** or (iii) an officer reasonably believes recording may assist with prosecution, enhance safety, or for any other lawful purpose." According to defendant, although the officer's vehicle was equipped with fully functioning video and audio recording equipment, the officer conducted field sobriety tests in a manner that would not be recorded by the video camera. Defendant argued that the officer's failure to record the field sobriety tests "amounts to spoliation of evidence in that he failed to properly preserve evidence" as required by statute. Defendant asked the trial court to suppress all observations made by the officer during the administration of field sobriety tests.

¶ 5    A hearing took place on October 21, 2013. At the hearing, State Police Officer Eric Longenecker testified that, on August 12, 2012, he stopped defendant's car, on a two-lane highway, for speeding and improper lane usage. Longenecker positioned his patrol car behind defendant's car on the "very small gravel shoulder." Longenecker proceeded to perform field sobriety tests on defendant. Longenecker performed the tests in front of defendant's car, rather than in front of his patrol car, for safety reasons, because if someone were to strike his car from behind while they were between the two cars, they could be pinned between the cars. Longenecker testified that his patrol car was equipped with working audio and video recording equipment. He explained that the audio and video equipment was recording during the stop, but "there was no clear line of sight" to where the field sobriety tests were performed. He stated: "I record what I can. I prefer to not get hit as opposed to getting it [*sic*]."

¶ 6    The trial court granted defendant's motion for sanctions, suppressing all observations made by Longenecker during the administration of field sobriety tests, because "defendant was

denied the ability to use that video." The court stated: "I know Peace Road and Fairview. You could have pulled around on Fairview where the traffic is minimal."

¶ 7    The State moved for reconsideration of the ruling, which the trial court denied, stating: "My basic concern is did the defendant get a fair trial. This could have been solved by a real simple thing. The police officer took a video of the defendant doing a field test taken [*sic*]. That didn't happen so I'll deny the motion to reconsider."

¶ 8    Thereafter, the State filed a certificate of impairment (see Ill. S. Ct. R. 604(a)(1) (eff. Feb. 6, 2013)) and a timely notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10    The issue on appeal is whether the trial court abused its discretion when it suppressed Longenecker's testimony about the field sobriety tests as a sanction for Longenecker's failure to capture the field sobriety tests on video. According to the State, sanctions were inappropriate because section 30 of the Act does not provide a remedy for noncompliance and because the State did not commit a discovery violation. 20 ILCS 2610/30 (West 2012). We agree.

¶ 11    We review for an abuse of discretion a trial court's decision to impose sanctions. *People v. Kladis*, 2011 IL 110920, ¶ 23. A trial court abuses its discretion where its ruling is arbitrary, fanciful, or unreasonable or no reasonable person would take the view adopted by the trial court (*People v. Anderson*, 367 Ill. App. 3d 653, 664 (2006)), or where its ruling rests on an error of law (*Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009)).

¶ 12    The sanction imposed here stems from Longenecker's alleged failure to comply with section 30(c) of the Act, which provides:

"(c) As of the effective date of this amendatory Act ***, in-car video camera recording equipment *** shall record activities outside a patrol vehicle whenever (i) an

officer assigned a patrol vehicle is conducting an enforcement stop; (ii) patrol vehicle emergency lights are activated or would otherwise be activated if not for the need to conceal the presence of law enforcement; or (iii) an officer reasonably believes recording may assist with prosecution, enhance safety, or for any other lawful purpose. ***

(1) Recording for an enforcement stop shall begin when the officer determines an enforcement stop is necessary and shall continue until the enforcement action has been completed and the subject of the enforcement stop or the officer has left the scene.

(2) Recording shall begin when patrol vehicle emergency lights are activated or when they would otherwise be activated if not for the need to conceal the presence of law enforcement, and shall continue until the reason for the activation ceases to exist, regardless of whether the emergency lights are no longer activated.

(3) An officer may begin recording if the officer reasonably believes recording may assist with prosecution, enhance safety, or for any other lawful purpose; and shall continue until the reason for recording ceases to exist." 20 ILCS 2610/30(c) (West 2012).

¶ 13    The State first argues that the trial court abused its discretion in imposing sanctions, because section 30 of the Act does not provide a remedy for noncompliance. In support of its argument, the State relies on *People v. Borys*, 2013 IL App (1st) 111629. In *Borys*, the defendant was convicted of aggravated DUI. *Id.* ¶ 1. On appeal, she argued that the trial court erred in permitting the arresting officer to testify about events that occurred during the traffic stop, because his patrol vehicle was not equipped to make a recording as required by the Act. *Id.*

She argued that the alleged statutory violation should be treated like a discovery violation, " 'otherwise the State Police would be incentivized to disobey the statutory mandate and simply not record traffic stops so as to avoid being required to disclose them during the discovery process.' " *Id*. ¶ 18. She asked that the case be remanded for a new trial, where the State would be barred from introducing testimony about events that should have been captured on video. *Id*. ¶ 19.

¶ 14    The First District affirmed. Although *Borys* dealt with a police officer who did not have video recording equipment in his vehicle, we find the court's analysis applicable here. The court first noted that "[n]othing in the plain and unambiguous language of section 30 of the Act indicates that an officer's testimony concerning a traffic stop is inadmissible if his patrol vehicle does not have the required video recording equipment." *Id*. ¶ 22. The court emphasized that section 30 of the Act was "a legislative directive to the Department of State Police to install recording equipment in squad cars and to preserve the recordings for a minimum time period; it does not address criminal procedure or the admission of evidence in a criminal trial." *Id*. The court stated that "because no recording was made, the prosecution cannot be said to have violated section 30 by failing to preserve and produce a nonexistent recording." *Id*. ¶ 23.

¶ 15    The *Borys* court rejected the defendant's argument that "under the mandatory/directory dichotomy, the requirements of section 30 of the Act are mandatory." *Id*. ¶ 24. In doing so, it set forth the following legal principles:

> " '[T]he mandatory-directory dichotomy *** concerns the consequences of a failure to fulfill an obligation' [citation]; it ' "denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates" ' [citation]. Statutes are mandatory if

the intent of the legislature dictates a particular consequence for failure to comply with the provision. [Citation.] 'In the absence of such intent the statute is directory and no particular consequence flows from noncompliance.' [Citation.] Under the mandatory/ directory dichotomy, language issuing a procedural command to a government official is presumed to indicate an intent that the statute is directory. This presumption is overcome when (1) there is negative language prohibiting further action in the case of noncompliance, or (2) the right the provision is designed to protect would generally be injured under a directory reading. [Citation.]" *Id*.

¶ 16 Applying the above legal principles, the court found that neither of the conditions was present to overcome the directory presumption. First, it found that the statute "lacks any negative language prohibiting further action if the Department of State Police does not comply with the recording equipment installation." *Id*. ¶ 25. Second, it found that "a defendant's right to a fair trial would not generally be injured under a directory reading of section 30 because the legislature clearly recognized that not all traffic stops would be recorded where section 30 gives the Department of State Police discretion to permit the use of vehicles despite recording failures or problems." *Id*.

¶ 17 We agree with *Borys*'s conclusion that section 30 of the Act is directory, as it does not dictate a particular consequence for a failure to comply with its requirements.[1] We also reject

_____

[1] In comparison, section 103-2.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-2.1 (West 2012)), unlike section 30(c) of the Act, provides a particular consequence for noncompliance. It provides that, if a court finds by a preponderance of the evidence that a homicide suspect was subjected to custodial interrogation "in violation of this Section" (*i.e.*, the interrogation was not recorded), the statements "are presumed to be inadmissible in any criminal

defendant's argument that the second condition applies to overcome the presumption that section 30 of the Act is directory. According to defendant, noncompliance with section 30 of the Act would generally injure a defendant's right to a fair trial. Our supreme court has noted that "the purpose of recording traffic stops and preserving these recordings for later production is to assist in the truth-seeking process by providing objective evidence of what occurred between the law enforcement officer and the citizen." *Kladis*, 2011 IL 110920, ¶ 34. However, the court further noted that the legislative history of the Act demonstrated that "the General Assembly enacted these laws with the view that these recordings could be useful to both the State and the defendant. If the recording reflects the defendant committing an offense, the State could use it to cement his or her guilt. The reverse is also true: if the recording does not clearly reflect commission of a crime, the defendant could use it in support of his or her defense." *Id*. Given the purpose of the Act, and the fact that a video recording could help or hinder either party's case, we cannot say that a defendant's right to a fair trial would generally be injured under a directory reading. Accordingly, we find that section 30 of the Act is directory and that no particular consequence is triggered from a failure to comply with it.

¶ 18 The State next argues that the trial court's imposition of sanctions was otherwise inappropriate, because the State did not commit a discovery violation. In *Kladis*, the supreme court affirmed the trial court's imposition of discovery sanctions, barring the State from presenting testimony as to the events surrounding the defendant's arrest, after it was discovered that the State destroyed the videotape of a traffic stop. *Id.* ¶ 1. Here, however, unlike in *Kladis*, the videotape was not lost or destroyed. The State complied with discovery and turned over the videotape. Thus there was no discovery violation. Nevertheless, defendant argues that *Kladis*

proceeding." 725 ILCS 5/103-2.1(d) (West 2012).

should not be narrowly interpreted to apply only to instances where the videotape has been destroyed. He maintains that we should find that "the knowing failure to properly use available video equipment is also sanctionable under similar reasoning."

¶ 19    We find *People v. Strobel*, 2014 IL App (1st) 130300, instructive on this argument. In *Strobel*, the defendant was detained for speeding. *Id.* ¶ 2. During the traffic stop, the police observed indicia of intoxication. *Id.* The police administered field sobriety tests, which the defendant failed. *Id.* As a result, the defendant was arrested and charged with DUI and speeding. *Id.* ¶ 1. In response to a discovery motion, the State tendered to the defendant a video of the traffic stop recorded by the police officers' in-car recording system. *Id.* ¶ 3. The video did not contain any audio, because the officers forgot to activate the audio component of the recording system upon approaching the defendant. *Id.* ¶ 4. The defendant filed a motion *in limine* and for discovery sanctions, asserting that the absence of the audio resulted in the " 'destruction of evidence' " and therefore constituted a discovery violation. *Id.* ¶ 3. The State responded that a discovery violation did not occur, because there was never an audio recording in the State's possession or control to hand over to the defendant. *Id.* ¶ 4. Relying on *Kladis*, the trial court agreed with the defendant and sanctioned the State by not allowing any testimony about the field sobriety tests and by not allowing the introduction of any video that showed the performance of those tests. *Id.* ¶ 5.

¶ 20    On appeal, the reviewing court reversed the discovery sanctions imposed by the trial court, stating: "*Kladis* does not stand as authority for imposing a sanction against the prosecution where the requested discovery material never existed in the first instance." *Id.* ¶ 11. The court explained:

"Here, when the police stopped defendant they failed to activate the audio recording function on their squad car video camera. As a result, the State tendered to defendant's attorney everything it possessed and controlled: the video of the traffic stop without an audio component. There is nothing in this record to support any inference or suggestion that the police or the prosecution intentionally or inadvertently destroyed any preexisting discoverable evidence. Therefore, the imposed exclusion sanction punished the prosecution for something that was outside its control and cannot reasonably be viewed as conduct that caused unfairness to the defendant or deprived him of an opportunity to prepare his defense.

Defendant argues that it is possible that an audio portion of the video may have helped [his] defense. It is equally possible the unrecorded audio had 'the potential to banish any hope of exoneration.' [Citation.] We cannot resolve this question by pondering possibilities. We must consider only that which is certain: there never was an audio recording of the events leading to defendant's field sobriety test. Given the facts of this case, absent a showing that the State lost or destroyed the audio component of the video or the existence of some other factor to justify a discovery sanction, there was an abuse of discretion in barring testimony concerning the field sobriety tests and in prohibiting the introduction of any video that showed the performance of those tests due to the State's failure to produce any recording of any audio that presumably occurred at the time the video was created. For these reasons, we find no discovery violation that supports the imposition of the sanctions imposed or the exclusion of the evidence requested in defendant's motion *in limine*." *Id*. ¶¶ 11-12.

¶ 21    Here, as in *Strobel*, "[t]here is nothing in this record to support any inference or suggestion that the police or the prosecution intentionally or inadvertently destroyed any preexisting discoverable evidence." *Id*. ¶ 11.  Longenecker recorded the stop, but because his patrol car was parked behind defendant's car, the field sobriety tests conducted in front of defendant's car are not visible.  Contrary to defendant's claim that Longenecker "intentionally withheld discoverable evidence," there is simply no evidence suggesting that Longenecker conducted the field sobriety tests in front of defendant's car for any reason other than for the safety of both himself and defendant.  Although the statute requires that traffic stops be recorded, traffic stops are conducted under a wide variety of conditions.  There is simply no way for an officer to guarantee that all relevant facts will be recorded in every circumstance.  Further, although the trial court asserted that Longenecker could have pulled defendant over in a different location, there was no testimony to support this assertion, to the extent that it was even relevant.

¶ 22    Accordingly, we find that the sanctions imposed in this case were not warranted.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated, we reverse the judgment of the circuit court of De Kalb County and we remand for further proceedings.

¶ 25    Reversed and remanded.