**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180463-U

Order filed March 3, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0463 Circuit No. 16-DT-661 |
| | ) | |
| THOMAS J. SLAYDEN, | ) ) | Honorable Thomas C. Berglund, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:  (1) The circuit court committed no error by suppressing evidence contemporaneously with its finding of guilt; and (2) defense counsel did not render ineffective assistance.

¶ 2       Defendant, Thomas J. Slayden, appeals his conviction for driving under the influence (DUI). He argues that the Rock Island County circuit court abused its discretion by excluding evidence of defendant's blood draw in the same written order in which it found defendant guilty of DUI. Defendant also contends that counsel rendered ineffective assistance for failing to move

to suppress the police squad car video of the traffic stop on the grounds that it did not show defendant's interaction with the arresting officer. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4       The State charged defendant with two counts of DUI, under subsections (a)(1) and (a)(2) of the DUI statute. 625 ILCS 5/11-501(a)(1), (a)(2) (West 2016). Under subsection (a)(1), DUI is committed where a person drives a vehicle while "the alcohol concentration in the person's blood, other bodily substance, or breath is 0.08 or more." *Id.* § 11-501(a)(1). Under subsection (a)(2), DUI is committed where a person drives a vehicle while "under the influence of alcohol." *Id.* § 11-501(a)(2).

¶ 5       The record shows that on the night of the traffic stop, police sought and received a warrant to draw defendant's blood after he refused to submit to a breath test. Defendant subsequently moved to suppress the blood evidence. In requesting a *Franks* hearing on the propriety of the warrant, defendant alleged that various statements in the warrant application were incorrect. Following a hearing, the court denied defendant's motion.

¶ 6       The matter proceeded to a bench trial. Officer Richard Downing of the Milan Police Department testified that he was dispatched to a McDonald's restaurant at 10:33 p.m. on the night in question. Upon his arrival, he noticed a white vehicle, matching the description given by dispatch, blocking the traffic exiting the McDonald's. Downing initially stopped his squad car in front of the white vehicle but repositioned his squad car so as to not block oncoming traffic.

¶ 7       Downing exited his squad car and made contact with defendant. Defendant was outside of the vehicle, reaching into it, when Downing first arrived. Defendant's eyes were red and watery; his speech was "very slurred"; and Downing described him as having "slow motor skills." Downing also detected a strong odor of an alcoholic beverage emanating from defendant,

2

an odor that became stronger when defendant spoke. At times during the encounter, defendant was unstable on his feet, such that he was forced to lean on his vehicle to maintain his stability. Defendant told Downing that he had consumed three beers.

¶ 8    Downing told defendant that he would be asked to perform field sobriety tests. According to Downing, defendant responded: "How about this? How about we just leave my truck here where it's at and we say 'fuck it'?" Downing also observed that the front of defendant's pants were wet, in such a way that Downing suspected defendant had urinated on himself. Defendant told him he had spilled oil. Defendant refused to perform field sobriety tests.

¶ 9    Downing transported defendant to the police station. During a 20-minute observation period, Downing observed that defendant was having difficulty staying awake. Defendant eventually declined to submit to a breath test. Downing testified that defendant made a number of curious remarks while at the police station: defendant indicated that he believed a window partition was actually a water fountain, and later asked Downing if they were going four-wheeling together. After receiving a warrant, Downing transported defendant to a hospital, where his blood was drawn at approximately 1:30 a.m.

¶ 10    The video recording from Downing's squad car was introduced into evidence without objection. Downing explained that because of the location of defendant's vehicle, he was unable to position his own vehicle in a way that allowed his interactions with defendant to be captured on the video. The court reviewed the video privately following closing arguments. The video shows Downing approaching defendant's vehicle, which is stopped in the exit of a McDonald's parking lot. After initially turning his squad car so that it faces the front of defendant's vehicle, Downing repositions the car so that it is within the first lane of cross-traffic. At that point, defendant's vehicle—which is situated perpendicular to Downing's squad car—can no longer be

3

seen on the video. The video presents only the audio portion of the interaction between Downing and defendant. While Downing can be heard clearly on the recording, it is at times difficult to discern defendant's statements. When Downing asks defendant how much he has had to drink, Downing responds: "I'll be honest with you, I probably had about three beers." Downing can be heard mentioning a number of the observations that he testified to, including the odor of alcohol, defendant's impaired movements, and his belief that defendant had urinated on himself.

¶ 11 Felicia Williams was the phlebotomist who drew defendant's blood on the night in question. She testified that when she encountered defendant, he was incoherent and smelled of urine.

¶ 12 Forensic scientist Dareea Paiva testified that she tested defendant's blood sample. When the State asked Paiva about the results of that testing, the defense objected on foundational grounds. The court determined that Paiva would be allowed to give her opinion as an offer of proof, to be stricken if the court did not ultimately determine that there was a proper foundation. Paiva testified that the blood contained ethanol at a level of 0.227 grams per deciliter. When the State attempted to introduce defendant's blood itself into evidence, the defense raised the same objection. The court stated that it would again reserve ruling so it could review the pertinent administrative rules. It informed the parties that it would accept briefing on the matter.

¶ 13 Defendant testified that he had no difficulties with his speech or balance on the night in question. He further explained that he worked with concrete and the chemicals in the concrete caused his eyes to become dry and bloodshot. Defendant admitted to consuming three beers that night. He was not impaired mentally or physically by the alcohol.

¶ 14 After closing arguments, the court took the matter under advisement. The State subsequently filed a brief in support of the admission of the blood test results. The court

4

delivered its verdicts in the form of a written opinion. Addressing the evidentiary question first, the court wrote: "With respect to the blood alcohol charge, the Court finds that the foundational requirements for introducing the lab analysis of the defendant's blood were not met." Specifically, the court found that the crime laboratory was not properly certified and that the State had also failed to demonstrate proper chain of custody. The order continued: "Accordingly, the Court will not admit the results of defendant's blood sample, and the defendant will be found not guilty of the (a)(1) count."

¶ 15     The court, however, found defendant guilty of DUI under subsection (a)(2), driving while "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2016). The court cited 10 separate observations by Downing in reaching that conclusion. It concluded: "Despite the lack of field sobriety tests and breath test, there are just too many indicators of impairment observed by Officer Downing."

¶ 16     Defendant filed a motion for new trial. In support of the motion, defendant argued, *inter alia*, that many of Downing's observations were not recorded on the squad car video, which raised questions of Downing's credibility.

¶ 17     The circuit court denied defendant's motion. In doing so, it commented that the squad car video, in addition to not capturing the interaction, was of such poor quality that he was unable to detect slurred speech. Nevertheless, the court found that Downing had testified credibly as to his observations, and it was that testimony the court relied upon in reaching its verdict. The court sentenced defendant to 24 months' probation.

¶ 18                                    II. ANALYSIS

¶ 19     Defendant raises two arguments on appeal. First, he contends that the court abused its discretion "[b]y failing to exclude the *** blood evidence prior to passing judgment on the

5

defendant's guilt or innocence." Second, he argues that defense counsel was ineffective for failing to move to suppress the squad car video. We affirm.

¶ 20                                    A. Blood Evidence

¶ 21        The circuit court ruled that the results of the laboratory testing on defendant's blood sample were inadmissible. Accordingly, the court found defendant not guilty of DUI under subsection (a)(1) of the DUI statute, which requires proof of an alcohol concentration of 0.08 or higher. Defendant does not challenge either of those decisions. Rather, defendant takes exception only with the *timing* of the court's judgment. He contends that the court should have ruled the evidence inadmissible "prior to passing judgment on the defendant's guilt or innocence." He further argues that the admissibility of the blood test results should have been treated as a "preliminary question of law to be made prior to judgment."

¶ 22        Defendant submits the circuit court erred by failing to enter separate orders—first, an order finding the evidence inadmissible, then, an order delivering the court's decision on the merits. This contention of error is not persuasive, elevates form over substance, and has no basis in the law.

¶ 23        Here, the circuit court's written opinion makes abundantly clear that the court considered the evidentiary question first and then obviously ignored the inadmissible evidence as demonstrated by a finding of not guilty on one of the charges. The case law provides that the circuit court is presumed to know the law and apply it correctly. *E.g.*, *People v. Phillips*, 392 Ill. App. 3d 243, 265 (2009). Thus, we would presume that the circuit court, having found the evidence of defendant's blood alcohol level inadmissible, would not then consider that evidence in reaching a determination on the impairment charge of DUI. In fact, such a presumption is not even necessary in the instant case, as the record makes abundantly clear that the circuit court in

6

fact did *not* consider the inadmissible evidence. The record reveals the court set forth its reasoning in a thorough written opinion. The court's finding of not guilty with respect to the blood-alcohol charge of DUI was explicitly premised on the fact that the court was not considering the results of defendant's blood analysis. The court then found defendant guilty based upon only admissible evidence, Downing's observations, making no mention of defendant's blood alcohol level.

¶ 24    Insofar as defendant is arguing that the evidentiary question should have been resolved at a separate proceeding, the circuit court is only able to address questions that are put before the court. The defense did not provide the circuit court with an opportunity to separately consider the admissibility of evidence prior to trial. Instead, defense counsel elected to raise the issue for the first time at trial during the State's case-in-chief, rather than challenging the evidence in a pretrial motion.[1] In spite of lack of prior notice of this issue, the circuit court did not rule on admissibility without an adequate opportunity to consider the merits of this issue. Instead, the circuit court judiciously invited the parties to submit briefs in support of their respective positions. We commend the circuit court for an approach that reserved its ruling in order to allow the court to make a more informed decision.

¶ 25                      B. Ineffective Assistance of Counsel

¶ 26    Defendant next argues that defense counsel rendered ineffective assistance by failing to file a written motion to suppress the squad car video. Defendant maintains that suppression of the video was mandated by the criminal eavesdropping statute (720 ILCS 5/14-2 (West 2016)), such that a written motion to suppress would not have been denied.

---

[1]Defendant does not contend that defense counsel was ineffective for doing so. Indeed, any such argument would be unavailing, as counsel's decision as to when evidence will be challenged is plainly a matter of trial strategy. See *People v. Perry*, 224 Ill. 2d 312, 344 (2007).

¶ 27     We analyze a claim of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, a defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Id.* Prejudice is demonstrated where a defendant shows that a reasonable probability exists that, but for counsel's deficient performance, the result of the trial would have been different. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 28     The eavesdropping statute prohibits the surreptitious recording of conversation without consent of all parties involved. 720 ILCS 5/14-2(a)(2) (West 2016). "Recordings made simultaneously with the use of an in-car video camera recording" of a police officer conducting a traffic stop are exempt from the statute. *Id.* § 14-3(h). Any evidence obtained in violation of the eavesdropping statute is inadmissible in a criminal trial. *Id.* § 14-5. Defendant contends that the squad car video in the instant case is not eligible for the exception contemplated in section 14-3(h) because the video did not actually capture the interaction between Downing and defendant. See *People v. Ceja*, 351 Ill. App. 3d 299, 301-02 (2004) (affirming the circuit court's suppression of audio recording, under a prior version of the eavesdropping statute, where the video component of the dashboard camera malfunctioned).

¶ 29     The present case does not require this court to decide whether the squad car video should have been suppressed pursuant to section 14-5 of the eavesdropping statute. This is true because even if suppression was warranted, such that counsel's failure to seek that remedy could be deemed deficient performance, defendant is unable to demonstrate prejudice due to this unique record. *E.g.*, *People v. Munson*, 171 Ill. 2d 158, 184 (1996) ("An ineffective-assistance claim

8

may *** be disposed of on prejudice grounds alone, without an examination of whether counsel was deficient."). First, the circuit court observed the video was of poor quality and did not assist the court in assessing Downing's testimony about defendant's slurred speech. In addition, the State's evidence was quite strong despite the absence of corroboration of Downing's testimony due to the substandard nature of the recording.

¶ 30     For example, Downing testified that when he encountered defendant, he noticed an odor of alcohol that became stronger when defendant spoke. Defendant's eyes were red and watery, his motor skills were impaired, his speech was slurred, and he struggled with his balance. Defendant admitted that he had consumed alcohol. As Downing's encounter with defendant continued, defendant made numerous nonsensical remarks. Downing also suspected that defendant had urinated on himself. Similarly, Williams also testified that in her opinion defendant was incoherent and smelled of urine. At most, the video confirmed Downing's testimony that defendant admitted to drinking three beers.

¶ 31     Finally, the circuit court made no reference to the squad car video in its written opinion supporting its finding that the State's evidence proved defendant guilty. Rather, it relied solely on Downing's observations in reaching its conclusion. In addressing defendant's posttrial motion, the court expressly stated that the video was not helpful, but that it found Downing to be credible in his observations. The court's comments confirm that the guilty finding was based solely on trial testimony. Accordingly, defendant was not prejudiced by the introduction of the video into evidence because the court did not rely on the contents of the video itself.

¶ 32     In closing, we recognize that defendant asserts: "A written motion calling for the suppression of the video, audio, *and all testimony regarding the interactions between the police officer and Defendant while the camera was in operation* during the DUI investigation would

9

have \*\*\* been successful." (Emphasis added.) This represents defendant's only reference to the potential suppression of not only the video, but also of Downing's testimony. The potential exclusion of Downing's testimony appears as an afterthought in the final paragraph of defendant's initial brief and is wholly unsupported by any argument or citation to case law. To be sure, we are aware of cases in which the circuit court, as a discovery sanction, has barred officers from testifying to the results of field sobriety tests performed outside of the view of the squad car camera. See *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 22 (reversed on appeal); *People v. Moises*, 2015 IL App (3d) 140577, ¶ 16 (reversed on appeal). This case presents a different factual scenario, in that no field sobriety tests were ever performed. Nevertheless, defendant has failed to properly raise the issue by addressing it in his opening brief, resulting in forfeiture. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief \*\*\*."). Accordingly, we decline the request to review the merits of this forfeited issue.

¶ 33                                III. CONCLUSION

¶ 34          The judgment of the circuit court of Rock Island County is affirmed.

¶ 35          Affirmed.

10