2021 IL App (2d) 200789-U
No. 2-20-0789
Order filed September 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF ELIZABETH M. SCARDINO, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 12-D-1578 |
| JOSEPH SCARDINO, | ) ) ) | Honorable Timothy J. McJoynt, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Respondent did not show that the trial court abused its discretion in setting maintenance.

¶ 2   The petitioner, Elizabeth Scardino (now known as Elizabeth Franko), and the respondent, Joseph Scardino, were divorced in 2014, after 29 years of marriage. In June 2018, Joseph filed a motion seeking to terminate or, in the alternative, decrease maintenance. The trial court ultimately reduced maintenance to $722 per month. Joseph appeals, arguing that maintenance should have been either terminated or reduced to about $13 per month. We affirm.

¶ 3                    I. BACKGROUND

¶ 4    As part of the 2014 judgment of dissolution, Joseph was ordered to pay Elizabeth $1200 per month as maintenance.  The amount was based on a finding that Joseph received $3200 per month from a pension and had imputed income of $3000 per month from his electrical business.  The judgment found that Elizabeth's income was disability insurance of $2020 per month, plus $2000 of imputed income based on the trial court's determination that Elizabeth was able to earn that much.

¶ 5    In his 2018 motion to terminate or decrease maintenance, Joseph stated that his health had declined to the point that he was no longer capable of earning as much income and he could not afford to pay any maintenance.  Discovery on the issue commenced, and Joseph was permitted to subpoena Elizabeth's bank accounts in Nebraska, where she lived.  Elizabeth had identified her checking account as her only bank account.

¶ 6    The evidentiary hearing on Joseph's motion was held on October 8, 2019.  Among other things, Joseph testified that his income consisted of his pension and social security (totaling about $3804 per month) and income from his electrical business.  However, because of his health (he had been diagnosed with prostate cancer and had had surgery in June 2018), he could no longer work as much as he had before.  Although his doctor had not restricted his ability to work, he could work only two to three hours per day, and could only perform lower-paying electrical work that paid $90 per hour.  He did not work much; on most days, he read and went to the gym to work out.  The evidence as to Elizabeth's income was mixed.  She was no longer on disability, and she had obtained a job with an annual salary of $80,000 soon after the dissolution, and a job with a salary of $50,000 after that.  However, by the time of trial, she no longer had either of those jobs and was no longer working.  Her current income totaled $1931.60 per month from social security and various pensions.

¶ 7    In November 2019, the trial court issued an order denying Joseph's request to terminate maintenance but reducing the amount of that obligation. The trial court noted that it had asked the parties which version of the recently-amended maintenance statute to apply, but neither party expressed an opinion. Under the applicable case law, it would apply the version of the statute in effect in 2018 when Joseph's motion was filed.

¶ 8    The trial court found that there had been a substantial change in Joseph's circumstances, such that the level of maintenance should be reconsidered. The trial court found that much of Joseph's testimony was not credible and was not supported by any documentary evidence. Based on Joseph's admissions that he could work up to three hours per day and earn $90 per hour, the court found that he could earn $1350 per week or about $70,000 gross per year. However, the trial court reduced this amount, imputing only $30,000 per year of gross income from Joseph's electrical business to him. When added to his annual income of $45,648 in pension and social security benefits, Joseph's gross annual income was $75,648.

¶ 9    As to Elizabeth's income, the trial court found that her imputed income should be reduced from the 2014 level ($2,000 per month, or $24,000 per year) to $10,000 per year. Beyond finding that both parties were able to perform at least some work, the trial court did not explain its reasons for setting Elizabeth's imputed income at this level. When the imputed income was added to her income from other social security and other sources, her gross annual income was $32,788 per year. Applying the statutory guidelines, monthly maintenance would be $969. However, stating that the statute capped maintenance at the level that would leave the recipient's total income

(including maintenance) at no more than 40% of the combined net monthly income of the parties, the trial court set maintenance at $515.[1]

¶ 10    Joseph filed a motion to reopen the proofs, contending that he had not received Elizabeth's bank records until after the evidentiary hearing was held, and those records showed that Elizabeth had an interest in a business that was not disclosed on her financial statements, and also had received unexplained amounts of cash.  The trial court granted the motion.

¶ 11    The hearing on the reopened proofs took place on two days in September and November 2020.  At the hearing, Joseph introduced bank records showing that (1) Elizabeth's name was on two bank accounts that she had not disclosed, one that served as the account for the Cumings School (an entity that owned the apartment building where she lived) and another account that Elizabeth testified belonged to her sister; and (2) Elizabeth's own checking account showed deposits of cash in varying amounts totaling over $30,000 between February 2018 and June 2019. As to the Cumings School account, Elizabeth testified that, although she was a signatory on the account as a convenience to her family members who owned the business, she had no interest in the business itself.  The evidence did not show that Elizabeth ever withdrew money from that account for herself; to the contrary, Elizabeth testified that, when she received rent checks that other tenants had mistakenly made payable to her, she deposited them into the Cumings School account.  Elizabeth also testified that she was added to her sister's account for a brief time so that,

_____

[1] The November 2019 order also found Joseph in contempt of court for failing to pay Elizabeth amounts that were due under previous court orders.  Although that finding (which was affirmed in the December 2020 order) is included in the orders being appealed here, Joseph's briefs do not assert any legal challenge to the finding of contempt.  We therefore do not address it here.

if her sister became incapacitated or died, the bills for her sister's husband's dialysis would continue to be paid. As to the cash deposits into her own account, which ranged between $100 and $5000, she testified that she did not know the source of that money. She noted that she had worked at Pizza Hut during part of that time.

¶ 12    In December 2020, the trial court issued an order modifying its previous order on maintenance. It found that Joseph had not proven that Elizabeth had an interest in the Cumings School business or in her sister's bank account. As to the cash deposits into Elizabeth's bank account, the trial court noted that these deposits and Elizabeth's Pizza Hut job were not disclosed during the initial hearing on Joseph's motion. The deposits averaged $1100 per month, or $13,200 per year. This amount would be counted as income to Elizabeth. However, the trial court also held that, "[b]ecause of this increased income, imputation of additional income" to Elizabeth was "no longer applicable." The trial court held that Elizabeth's income was $35,988 per year ($13,200 of unexplained cash income and $22,788 of social security and pension payments), rather than $32,788 as calculated in its prior order. However, the November 2019 order also contained an error in the application of the 40% cap which, under the 2018 version of the statute, should have been based on the parties' gross incomes rather than net. Correcting this error and applying the statutory formula to the parties' incomes, the correct amount of maintenance was $722 per month, and that obligation would take effect in January 2021.

¶ 13    Joseph filed a timely notice of appeal from the November 2019 and December 2020 orders.

¶ 14                                II. ANALYSIS

¶ 15    Joseph raises a host of arguments to support his main contention, which is that the trial court set his maintenance obligation too high. An award of maintenance is within the trial court's discretion, and we will not reverse the trial court's determination unless it is clear that it has abused

that discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11. The party challenging the award of maintenance bears the burden of showing such an abuse of discretion. *Schneider*, 214 Ill. 2d at 173. Joseph suggests that we should review some of the trial court's rulings *de novo*, because they involve statutory interpretation. We reject this suggestion, as Joseph does not raise any purely legal issues on appeal. Thus, in order to prevail, Joseph must show that the trial court abused its discretion. We find that he has failed to carry this burden on any of his arguments.

¶ 16 Joseph begins by arguing that the trial court erred because it did not count the unexplained cash deposits into Elizabeth's checking account as income to her. However, this argument is clearly refuted by the record: in its December 2020 order, the trial court explicitly stated that it considered these deposits, which averaged $1100 per month, as income to Elizabeth. It therefore held that her annual income included $13,200 more than she acknowledged receiving in social security and retirement payments. We note that this portion of Joseph's arguments never challenges the trial court's calculations; it simply advances the legal argument that the deposits met the statutory definition of income. As the trial court agreed with and adopted this proposition, Joseph has not shown any error in this regard.

¶ 17 Joseph next argues that the trial court erred in its imputation of income to both parties, by imputing too much income to Joseph and too little to Elizabeth. Because one of the factors to be considered in maintenance determinations is "the realistic present and future earning capacity of each party" (750 ILCS 5/504(a)(3) (West 2018)), a trial court may impute income to a party based on evidence that the party is voluntarily unemployed or underemployed. *In re Marriage of Ruvola*,

2017 IL App (2d) 160737, ¶ 39. As with other aspects of an award of maintenance, we review the trial court's determinations regarding imputed income for an abuse of discretion, and the party challenging the award of maintenance bears the burden of showing such an abuse of discretion. *Schneider*, 214 Ill. 2d at 173.

¶ 18 As to Joseph's imputed income, this argument lacks merit. Joseph testified that he was able to work two to three hours per day, earning $90 per hour, an earning capacity of about $45,000 to $70,000 per year. Nevertheless, he instead chose to read and go to the gym each day, and declared only a few thousand dollars of annual income from his electrical business. This evidence amply supported the trial court's finding that Joseph was underemployed, as well as its calculation that Joseph had an unrealized earning capacity of at least $30,000 per year.

¶ 19 As to Elizabeth, the trial court determined that she was capable of earning some income, and it attributed an annual income of $13,200 to her based on the evidence of the deposits into her checking account. Joseph argues that the trial court should have found that she was underemployed and had the capacity to earn more, without identifying what he believes her earning capacity was or evidence that mandates such a conclusion.

¶ 20 Joseph points out that in 2014 the trial court imputed an income of $24,000 per year to Elizabeth, and she was employed at higher salaries during the next few years after that. However, Joseph did not seek to reduce maintenance until June 2018. Thus, the relevant issue was her "realistic present or future earning capacity" at that time. The evidence as to that period was that Elizabeth was either unemployed or working at Pizza Hut. Although her work history before 2018 was relevant to her present earning capacity, it was not a sufficient measure in itself, as parties' earning capacities change over time. Joseph had the opportunity to inquire into Elizabeth's current qualifications, her health, her attempts to obtain other work, and other facts that would establish

her earning capacity, but he did not do so. Accordingly, he has not met his burden of showing that the trial court abused its discretion in determining that Elizabeth's earning capacity was no greater than the $13,200 per year it found she was producing.

¶ 21 Joseph's final argument is that the trial court erred in calculating the proper amount of maintenance. He believes that Elizabeth's annual income from the unexplained cash deposits was not $13,200 as found by the trial court, but was instead $27,378. Although it is not entirely clear from Joseph's briefs or the record, it appears that the trial court may have excluded certain deposits from consideration and may also have averaged Elizabeth's income from the deposits over a longer period of time, whereas Joseph appears to have selected the 12-month period during which Elizabeth made the greatest amount of deposits as the basis for his calculations of "annual" income. Regardless, however, what Joseph has *not* done is show that the trial court's method of calculating Elizabeth's income was an abuse of discretion, either by showing that the exclusion of certain amounts was improper under the statute or that the averaging method used was incorrect. Instead, Joseph simply puts forward his own calculations of Elizabeth's income. This is insufficient to carry his burden of showing that the trial court abused its discretion—*i.e.*, that its ruling was arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court, or that its ruling rested on an error of law. *Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 22 We note that Joseph also suggested that, on review, we should hold that the trial court should have applied the version of the maintenance statute that was in effect in 2019 when it first ruled, rather than the version in effect when he filed his 2018 motion seeking to terminate or modify maintenance. However, Joseph forfeited this argument by failing to raise it in the trial court and, on appeal, by failing to provide any legal reasoning showing that the trial court's decision was error. See *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 24 ("It is well settled

in Illinois that an appellant who fails to raise an issue before the trial court forfeits the issue and may not raise it for the first time on appeal."); *People ex rel. Illinois Dep't of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7), (i) (see Ill. S. Ct. R. 341(h)(7), (i) (eff. Feb. 6, 2013))" and "results in forfeiture" of the argument). We therefore decline to address the issue.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 25    Affirmed.