2024 IL App (2d) 240279
No. 2-24-0279
Opinion filed July 8, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CF-643 |
| QUINTON K. HAWKINS, | ) ) | Honorable Todd B. Tarter, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1       The State appeals from the trial court's order granting the defendant, Quinton K. Hawkins,

pretrial release with conditions under article 110 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See

Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652);

*Rowe v. Raoul*, 2023 IL 129248, 52 (lifting stay and setting effective date as September 18, 2023).

We vacate and remand for a new detention hearing.

¶ 2                            I. BACKGROUND

¶ 3       On March 29, 2024, the defendant was charged with two counts of predatory criminal

sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2022)), a Class X felony; two counts of

aggravated battery (*id.* § 12-3.05(a)(5)), a Class 1 felony; and one count of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(2)(i)), a Class 2 felony. The charges were based on allegations that the defendant sexually assaulted his girlfriend's seven-year-old daughter by touching the child's vagina and that he strangled her. On the same day, the State petitioned to deny the defendant pretrial release. 725 ILCS 5/110-6.1 (West 2022). The State alleged, in relevant part, that the defendant should be denied pretrial release because he posed a real and present threat to the safety of any person or the community. *Id.* § 110-6.1(a)(1.5), (5), (8).

¶ 4 At the hearing on the State's petition, the State tendered the charging document, the defendant's criminal history, and a police synopsis. The police synopsis indicated as follows. On March 15, 2024, the police responded to an Elgin elementary school based on the report of a sexual assault. The victim told her first-grade teacher that the defendant had choked her. The victim told a school social worker that the defendant "told her [about 10 times] to do something with his DI and she did not feel comfortable with his private parts." On March 18, 2024, the police met with the victim's mother, C.M., at the Kane County Child Advocacy Center (CAC). C.M. stated that the defendant picked the victim up from school but was rarely alone with the victim. C.M. had not spoken to the victim about the disclosure.

¶ 5 In an interview at the CAC, the victim stated that the defendant would pick her up from school and show her adult videos on his phone. He would also wake her up at night to try to kiss her and show her adult videos. He told her that if anyone found out, she and the defendant would die. The defendant would put his hand under her underwear. The victim showed the interviewer how the defendant would move his hand on her vagina. He did this once in her bed and another time in the hallway. One time he touched her vagina over her clothes in the hallway. Another time the defendant showed her adult videos while they were on the couch, and he told the victim to

"grip" his penis and put her mouth on it. When the victim said no, the defendant choked her, and she could not breathe. The victim said the defendant would touch her when C.M. was sleeping.

¶ 6     The synopsis further indicated that the defendant had three pending out-of-state warrants for his arrest. The defendant also had prior gun charges, domestic violence charges, and numerous traffic arrests. On March 26, 2024, the police interviewed the defendant at the Department of Children and Family Services (DCFS) office in Elgin. The defendant admitted that he was arrested three times for domestic battery, including one battery against a 12-year-old child. He confirmed that he had been arrested twice on gun possession charges and was released from an Indiana prison the previous summer. He denied the victim's allegations and agreed to have his phone searched.

¶ 7     According to the synopsis, the search of the defendant's cell phone showed that C.M. was giving the defendant updates about the investigation. C.M. texted the defendant that he needed to leave her residence because the police were coming to take the victim's bedsheets and clothes and that he should take out the garbage. C.M. also sent a text telling the defendant that the victim had described the abuse that occurred on the couch and told C.M. that the defendant kept checking to make sure C.M. was still asleep. After DCFS told C.M. that the defendant was not allowed to come to her home, C.M. texted that it was okay for him to come over. The defendant texted back, telling C.M. to leave the door unlocked. The police found two videos on the defendant's phone showing a younger female performing oral sex on a man. The police noted that the female person on the video was likely not a minor.

¶ 8     Finally, the synopsis indicated that, on March 28, 2024, the police met with the defendant again at the DCFS office in Elgin. The defendant admitted going to the victim's house after being told he was not allowed to do so. He went over twice, including on the night of the disclosure. The defendant stated that the adult video on his phone was sent to him and that he never showed it to

the victim. It was possible that the victim took his phone and found the video on her own. The defendant was then arrested.

¶ 9     At the hearing, the State noted that the victim was seven years old and that she had a three-year-old brother. The State realleged the information contained in the synopsis. The State found it significant that C.M. downplayed the allegations and invited the defendant to come to the victim's house after DCFS prohibited her from doing so. The State argued that the videos on the defendant's cell phone supported the victim's allegations. The State asserted that the allegations showed that the defendant posed a threat to the victim, her younger brother, and any other child under 18 years of age. The State argued that no conditions could mitigate the threat posed by the defendant. Electronic home monitoring (EHM) could not prevent the defendant from being in contact with minors, and it could not prevent C.M. from bringing the victim and her brother to visit the defendant.

¶ 10     The defendant argued that the allegations were insufficient to detain him. He had no criminal history involving child sexual abuse. The child involved in the 2021 conviction for domestic battery told an interviewer at the CAC that he felt safe around the defendant. The defendant argued that the victim had behavioral issues and was not credible, noting that there was no evidence of strangulation marks on the victim's neck. The defendant asserted that the victim saw the video on his phone and then related the allegations as a vendetta against him for disciplining her. He stated he was no longer dating C.M. and would have no reason to see the victim or her brother. He argued that conditions of release could mitigate any threat he posed. He was willing to be placed on EHM and abide by a no-contact order with C.M. and her home. The defendant had partial custody of his five-year-old daughter and needed to provide for her. The defendant requested that he be released.

¶ 11    Following argument, the trial court rendered its ruling. The trial court stated that it considered the petition, the synopsis, the arguments of the parties and, as to dangerousness, the factors in section 110-6.1(g) of the Code (*id.* § 110-6.1(g)). The trial court noted that the allegations in the synopsis were "quite disturbing" and that C.M. did not provide a safeguard for the victim. The trial court questioned whether EHM or a stay-away order could protect the victim from the defendant. At that point, the defendant requested to speak. The defendant stated that the victim was in her father's custody until further order of the court, that her father did not live in Elgin, and that, depending on the DCFS investigation, the victim could be placed with her father long-term. The trial court then stated that, based on the information that the victim was in the custody of her father, it did not think the State proved its case. The trial court found that the defendant did not pose a threat to the victim's safety as of the time of the hearing. The trial court said it would deny the petition and release the defendant with maximum conditions. The State then interjected, noting that there was no evidence of how long the victim would be in her father's custody. The State noted that she was initially placed there for 60 days, pending a DCFS investigation, but it was possible that the victim would be returned to C.M. after the investigation concluded. At that point, the trial court stated that it would order that the victim had to "remain in the custody of [her] father, until further order of court, regardless of the pending investigation by DCFS." The trial court also ordered EHM and that the defendant have no contact with C.M. or any other child under 18, including the defendant's own daughter. The record indicates that the defendant remained in custody for five days pending an extradition hearing in an out-of-state case and was then released on EHM. Thereafter, the State filed this timely appeal.

¶ 12    In its form notice of appeal, the State checked the preprinted box indicating that the trial court erred in determining that the State failed to prove that the defendant posed a real and present

threat to the safety of any person, persons, or the community. In the blank lines underneath, the State elaborated by reiterating the victim's allegations and the defendant's criminal history. The State then wrote that "[t]he fact that the victim in this case currently lives with her father does not mitigate the real and present threat to the safety of other children." The State also checked the preprinted box entitled "[o]ther" and noted that the trial court seemed to change its mind about detention when it found out that the victim was in the custody of her biological father. The State further wrote that "[e]ven assuming this protects the named victim, it does nothing to protect other children in the community." The State did not check the preprinted box related to trial court error in finding that the State failed to prove that no conditions could mitigate the defendant's threat to any person, persons, or the community, or any other boxes related to conditions of pretrial release. Thereafter, both parties filed memoranda pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024).

¶ 13                                   II. ANALYSIS

¶ 14     In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). The Code creates a presumption that "a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." *Id.* § 110-2(a).

¶ 15     As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person

or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 16    We review the court's decision to grant or deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.* Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 17    On appeal, in its written memorandum, the State argues that the trial court erred in failing to grant its petition to detain the defendant. First, the State argues that the trial court considered only the threat the defendant posed to the victim but failed to consider the threat the defendant posed to the community. Second, the State argues that the trial court erred in finding that the defendant did not pose a threat to the victim. The State notes that the trial court did not have the authority to order that the victim remain in the custody of her biological father and argues that the trial court placed undue weight on the threat to the victim and did not consider other factors, such

as the nature and circumstances of the offense and the defendant's criminal history. Finally, the State argues that the trial court failed to consider all the appropriate statutory factors when finding that conditions of release could mitigate the threat posed by the defendant.

¶ 18    The State has forfeited its arguments that the trial court erred in finding that (1) the defendant was not a threat to the victim and (2) conditions of release could mitigate any threat. Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024) requires that a notice of appeal include both a description of the relief sought and *the grounds for that relief.* In its notice of appeal, the State checked the box challenging the trial court's finding that the State failed to prove that the defendant was a threat to any person, persons, or the community. The grounds provided by the State was that "[t]he fact that the victim *** currently lives with her father does not mitigate the real and present threat to the safety of other children." The State also checked the box next to "[o]ther" and argued that the fact that the victim was in her father's custody "does nothing to protect other children in the community." Accordingly, the grounds provided by the State in the notice of appeal allege trial court error only in failing to find that the defendant posed a threat to the community. The State failed to include any argument that the trial court erred in finding that the defendant was not a threat to the victim or that the conditions of release could not mitigate any threat posed by the defendant. While an appellant can abandon arguments raised in the notice of appeal by not including them in subsequent Rule 604(h) memorandum (*People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22), it is axiomatic that any argument raised in a supporting memorandum must first be raised in the notice of appeal. Nonetheless, forfeiture is a limitation on the parties, not the court, and we "may look beyond considerations of forfeiture to maintain a sound and uniform body of precedent or where the interests of justice so require." *People v. Jackson*, 2020

IL 124112, ¶ 118. Here, the face of the record includes a clear error of law, and in the interest of justice, we overlook the State's forfeiture and reach the merits.

¶ 19 A review of the record indicates that the trial court was originally inclined to detain the defendant. The trial court noted that the allegations in the synopsis were "quite disturbing" and that C.M. did not abide by orders to keep the defendant away from the victim. The trial court stated that, based on C.M.'s conduct, it was unsure whether EHM or a stay-away order could protect the victim. The defendant then interjected, noting the possibility that, as a result of DCFS proceedings, the victim's biological father could be granted long term custody of the victim. At that point, the trial court changed direction and granted the defendant pretrial release with conditions. One of those conditions was that the victim was "to remain in the custody of [her] father." However, the trial court exceeded its authority in ordering the victim to remain in the custody of her father, as custody was not at issue in this case. The only issues properly before the court at this hearing were pretrial detention and any other necessary criminal pretrial matters. The victim and her parents were not even parties to this case. See *In re Marriage of Birt*, 157 Ill. App. 3d 363, 370 (1987) (trial court's custody order reversed where custody was not at issue and no evidence was presented related to the parties' parenting ability or the children's best interest); see also *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994) (trial court cannot *sua sponte* adjudicate an issue not properly raised in the pleadings and presented by the parties). The record indicates that the trial court's determination that the defendant was not a threat to the victim and granting pretrial release with conditions was, at least partially, based on the erroneous custody order. As the trial court did not have the authority to enter a custody order, its ruling was an abuse of discretion. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11 (a trial court abuses its discretion when its ruling rests on an error of law). Accordingly, we remand this case for a new detention hearing where the trial court can

reconsider whether the defendant poses a threat to any person or persons or the community and whether pretrial conditions can mitigate that threat.

¶ 20                             III. CONCLUSION

¶ 21    For the reasons stated, we vacate the judgment of the circuit court of Kane County and remand for a new detention hearing.

¶ 22    Vacated and remanded.

*People v. Hawkins*, **2024 IL App (2d) 240279**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 24-CF-643; the Hon. Todd B. Tarter, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Carolyn R. Klarquist, and Elizabeth M. Crotty, of State Appellate Defender's Office, of Chicago, for appellee. |