*In re* MARRIAGE OF JAMES P. CONNORS, Petitioner-Appellant, and PATRICIA A. CONNORS, Respondent-Appellee.

Second District No. 2—98—0591

Opinion filed February 16, 1999.

Bernard Z. Paul and Kathryn K. Buzzard, both of De Kalb, for appellant.

K.O. Johnson and Lawrence J. Lucido, both of Law Office of K.O. Johnson, of De Kalb, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The petitioner, James Connors, appeals from the April 7, 1998, order of the circuit court of De Kalb County requiring him to pay an additional five years of maintenance to the respondent, Patricia Connors. On appeal, James argues that the trial court's order (1) was contrary to the prior law of the case; (2) violated the doctrines of res judicata and collateral estoppel; (3) was based on unlawful considerations; (4) was based on the erroneous finding that Patricia had been reasonably diligent in seeking employment; (5) was against the manifest weight of the evidence; and (6) failed to account for the parties' standard of living at the time of the divorce. We affirm.

The parties' marriage was dissolved on December 27, 1994, following a 23-year marriage. Three children were born to the marriage. One child, having not yet reached majority, was still living with Patricia at the time of the dissolution. During the marriage, Patricia attained a bachelor's degree in education from Northern Illinois University. She also received certification to teach home economics in grades 6 through 12. However, she never worked as a teacher during the marriage. Patricia worked primarily as a homemaker during this time, although she worked occasionally outside the home while her youngest child went to school. At the time of the dissolution, James was employed as a city administrator and was earning approximately $70,000 a year.

The trial court's dissolution order awarded Patricia the majority of the marital property. Patricia was awarded the $114,000 marital residence, subject to the mortgage debt of $55,953. The trial court further awarded Patricia 15% of James's pension, which at the time of the dissolution was valued at $75,112. The trial court also ordered James to pay the family debts of $6,774, Patricia's attorney fees of $3,773, and

$786 a month in child support to Patricia. The trial court further ordered James to pay Patricia $982 a month in maintenance after determining that maintenance was necessary in order for Patricia to provide for herself. The trial court declined to classify such maintenance as rehabilitative, specifically finding that "it would be speculation to assume that [Patricia] would be able to maintain herself after any set period of time." The trial court additionally ordered that the maintenance award would be reviewable after one year in order to assess Patricia's progress toward becoming self-sufficient and whether she was still in need of maintenance.

On January 26, 1996, James petitioned the trial court for a review of Patricia's maintenance award. On October 11, 1996, the trial court conducted an evidentiary hearing on the petition. At the close of the hearing, the trial court found that (1) Patricia had not made reasonable efforts to become self-sufficient; (2) the judgment of dissolution did not provide for permanent maintenance; and (3) Patricia, although in need of support, must be encouraged to make progress towards becoming self-sufficient as the original decree provided. The trial court therefore reduced Patricia's award of maintenance to $500 a month and ordered that the award be reviewable in one year to determine if it should be reduced or eliminated. On November 19, 1996, the trial court entered its amended findings and order, specifically finding that Patricia's award of maintenance was "rehabilitatory."

On October 7, 1997, James again petitioned the trial court for a review of Patricia's maintenance award. Between March 17, 1998, and April 7, 1998, an evidentiary hearing on the petition was held before a trial judge different from the one who had conducted the October 11, 1996, hearing. At the hearing, John Vicha, the assistant superintendent of Community Unit School District No. 300, testified on James's behalf. Vicha testified that his district had advertised three home economics teaching positions beginning in April 1997. He further testified that, as of March 1998, one position was still unfilled because of a lack of qualified applicants.

Barbara Coughman, an education consultant at Northern Illinois University's career planning and placement center, also testified on James's behalf. Coughman testified that she was the editor of the Education Vacancies Bulletin, which listed job openings for teachers in Lake County and northeastern Illinois. She testified that, between February 26, 1997, and August 20, 1997, there were 30 positions listed in the Bulletin for secondary home economics teachers and 29 positions for elementary school positions with a Type 3 certificate. Coughman further testified that Northern Illinois graduates could register as job seekers with the career planning and placement center. Cough-

man testified that, although Patricia had registered as a job seeker, she had allowed her registration to lapse early in 1997.

Patricia testified that since the previous hearing she had been substitute teaching and had taken two education courses in the spring of 1997. As a result of this course work, she stated, in June 1997 she had obtained her certificate to teach elementary school. Patricia testified that on August 4, 1997, she signed a contract at a salary of $19,550 for a full-time position teaching second grade at the Santa Maria del Popolo School in Mundelein. Patricia stated that, although she had applied for at least 30 full-time positions teaching elementary education since the last hearing, this was the only full-time job offer that she had received. .

Patricia also testified that she had interviewed for a home economics position at Zion-Benton High School but that she did not receive the position. She stated that she made a job inquiry to the Carpentersville school district regarding a possible opening for a home economics teacher but learned that they currently had no openings. Patricia testified that, although she had a degree in home economics, she had difficulty finding a job in this area because she had no· experience teaching the subject.

Patricia also testified that she had sold the marital home in May 1996 for $136,250, that she had moved out of the home and eventually sold it because it was in "poor repair," and that she was now living with her parents.

At the close of the hearing, the trial court ordered James to continue to pay Patricia maintenance in the amount of $500 per month and ordered that the award would be reviewable in 60 months. In support of its ruling, the trial court made the following factual findings: (1) James was currently earning $83,000 a year; (2) Patricia no longer owned a home and was living with her parents; (3) Patricia had received only 15% of James's pension; (4) Patricia had used reasonable diligence to find employment since the last hearing and was now working full time at a parochial school for a salary of $19,500; and (5) Patricia was in need of the current level of maintenance in order to maintain an appropriate standard of living.

The trial court explained that its ruling was not contrary to the earlier proceedings in the case, noting that the original maintenance order "contemplated the possibility of long-term maintenance." The trial court also noted that, at the subsequent maintenance review, although the previous judge had classified Patricia's award as "rehabilitatory," he did not, in fact, "set any cutoff on maintenance [or] purport to award non-modifiable maintenance." The trial court explained that this previous order indicated that "any future ruling on the amount

and duration of maintenance would clearly depend on what the evidence showed at a subsequent hearing." On May 7, 1998, James filed a timely notice of appeal.

James's first argument on appeal is that the trial court erred in not following the prior law of the case. James contends that the trial court's previous orders established that Patricia's award of maintenance was not to be permanent but of a rehabilitative nature. James argues that the trial court ignored and effectively reversed its prior orders when it awarded Patricia maintenance without a termination date or any express conditions for termination.

■ Section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/510(a) (West 1996)) provides that maintenance may be modified "only upon a showing of a substantial change in circumstances." The party seeking modification bears the burden of proving this change. *In re Marriage of Logston,* 103 Ill. 2d 266, 287 (1984). A trial court's determination of maintenance is entitled to great deference. *In re Marriage of Ward,* 267 Ill. App. 3d 35, 41 (1994). A maintenance award will not be set aside unless it is as an abuse of discretion or against the manifest weight of the evidence. *Ward,* 267 Ill. App. 3d at 41.

■ Relying on the "law of the case" doctrine, James contends that the trial court erred by not reducing or eliminating Patricia's award of maintenance. Under this doctrine, " 'a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' " *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.,* 284 Ill. App. 3d 627, 632 (1996), quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C. Cir. 1987). The doctrine encompasses a court's explicit decisions as well as those issues decided by necessary implication. *Aardvark Art,* 284 Ill. App. 3d at 632-33. However, the law-of-the-case doctrine does not preclude the trial court's reconsideration of an earlier judge's order if the facts before the court have changed or if error or injustice must be remedied. *People v. Williams,* 138 Ill. 2d 377, 392 (1990).

■ We do not believe that the law-of-the-case doctrine is applicable to the instant case. Our research reveals no Illinois authority that has applied this doctrine in such a manner so as to preclude a trial court's authority to hear and rule upon a petition for a modification of a maintenance award. Indeed, we believe that applying this doctrine to the instant case is irreconcilable with the direct mandate of the Marriage Act, which provides that "any judgment" is subject to modifica-

tion. See 750 ILCS 5/510(a) (West 1996). Therefore, regardless of how the trial court originally classified the maintenance award, we do not believe it was precluded from modifying the award upon a showing of a substantial change in circumstances. See *In re Marriage of Mittra*, 114 Ill. App. 3d 627, 635 (1983) (permanent award may be subject to modification); *In re Marriage of Asch*, 100 Ill. App. 3d 293, 298-99 (1981) (rehabilitative maintenance award may be extended for greater duration depending on wife's progress when reviewed after three years).

Moreover, even if the law-of-the-case doctrine were applicable to the instant case, we do not believe that the trial court's order at issue here conflicts with the prior orders entered in the case. As noted above, the trial court's original December 27, 1994, dissolution order required James to pay Patricia $982 a month in maintenance and required Patricia to make attempts to become self-sufficient. The trial court expressly refused to characterize its maintenance order as rehabilitative and provided for review of its award after one year. On October 11, 1996, the trial court extended Patricia's award of maintenance but reduced the award to $500 a month. The trial court provided for review of the order after one year and classified the maintenance award as rehabilitative rather than permanent. On April 7, 1998, the trial court again extended Patricia's award of maintenance of $500 per month, finding that she was still in need of assistance. The trial court then expressly declined to make a finding that the maintenance was permanent and ruled that the award could be reviewed after 60 months.

At each of these hearings, the trial court found that Patricia was in need of assistance but declined to make a permanent award of maintenance so that Patricia would be encouraged to become self-sufficient. Indeed, during the April 7, 1998, hearing, the trial court explicitly stated that it was not awarding permanent maintenance because such an award would eliminate any incentive for Patricia to pursue the long-term options available to her to improve her ability to support herself. Despite James's contentions to the contrary, we do not believe that the trial court's April 7, 1998, order is inconsistent with the prior law of the case, and therefore we decline to disturb the trial court's judgment on this basis.

In a related argument, James's second contention on appeal is the trial court improperly extended Patricia's maintenance award in violation of the doctrines of *res judicata* and collateral estoppel. James argues that the trial court was bound by its prior factual findings as to the nature and the amount of maintenance.

■ Contrary to James's assertions, the doctrine of *res judicata* does not apply to the instant case. *Res judicata* bars the relitigation of

an issue between the same parties after a final judgment on the merits has been rendered by a court of competent jurisdiction. *In re Marriage of Firestone*, 158 Ill. App. 3d 887, 891 (1987). An essential part of *res judicata* is that there be an identity of causes of action, meaning an identity of the facts essential to the continuance of the action. *Firestone*, 158 Ill. App. 3d at 891. A maintenance award is *res judicata* only to those facts at the time it is entered, and changed circumstances justifying the modification of maintenance must occur after the award. *In re Marriage of Waldschmidt*, 241 Ill. App. 3d 7, 11 (1993). Courts in modification proceedings allow the parties to present only the evidence going back to the latest petition for modification in order to avoid the relitigation of matters already settled. *In re Marriage of Pedersen*, 237 Ill. App. 3d 952, 957 (1992).

■ As discussed above, we do not believe the trial court was obligated to classify the nature of the maintenance award the same as the prior trial courts had done. Instead, the trial court was required to consider only those facts since the last modification hearing and to alter the award only upon a showing of a substantial change of circumstances. *Pedersen*, 237 Ill. App. 3d at 957. The burden was on James, as the party seeking modification, to prove that a substantial change of circumstances had occurred. *Logston*, 103 Ill. 2d at 287. Since the last hearing, the most salient changed facts were that Patricia had attained employment at a parochial school and was earning a salary of $19,550; Patricia had sold the marital home and was now living with her parents; and James had received an increase in salary to $83,000 per year. As all of these facts were new since the last hearing, the trial court was not barred by *res judicata* from considering them in relation to the propriety of the maintenance award. See *Waldschmidt*, 241 Ill. App. 3d at 11.

Moreover, we note that James's argument may have been more persuasive had the trial court actually altered the maintenance award. Instead, the trial court left the amount of the maintenance award the same and extended its duration for an additional five years. As stated above, the burden was on James to establish why the award should be reduced. *Logston*, 103 Ill. 2d at 287. Considering the salient facts that were adduced at the hearing and are reiterated above, we cannot say that the trial court abused its discretion in finding that Patricia was still in need of maintenance in order to live at the level to which she was accustomed during the marriage. Additionally, despite James's contentions to the contrary, we do not believe that the duration of Patricia's award violated *res judicata* or evidenced an abuse of the trial court's discretion. See *In re Marriage of Hensley*, 210 Ill. App. 3d 1043, 1045, 1050 (1991) (award of maintenance for 8$^1$/2 years not subject to review until the fourth year of the award was proper).

■ Nor do we do believe that the doctrine of collateral estoppel is applicable to this case. The doctrine of collateral estoppel applies when a party participates in two cases arising on different causes of action and some controlling fact or issue material to the determination of both causes has been adjudicated against that party in the former case by a court of competent jurisdiction. *Firestone*, 158 Ill. App. 3d at 892. In order to operate as an estoppel, the facts sought to be relitigated must have been actually litigated and necessarily decided. *Gelsomino v. Gorov*, 149 Ill. App. 3d 809, 812 (1986). As discussed above, since the facts considered by the trial court at the modification hearing were different from the facts in the prior hearings on Patricia's maintenance award, the doctrine of collateral estoppel is not applicable to the case at bar.

James's third contention on appeal is that the trial court's decision should be reversed because it was based on unlawful considerations. James argues that the trial court had no lawful reason to consider that Patricia no longer owned a home or that she had been awarded only 15% of James's pension during the division of the marital property. We find this contention without merit.

■ ■ In order to determine whether and to what extent maintenance should be modified, a trial court should consider the same factors it considers in making an initial award. *In re Marriage of Krupp*, 207 Ill. App. 3d 779, 792 (1990); see also *In re Marriage of Lasota*, 125 Ill. App. 3d 37, 42 (1984) (modification of a maintenance award must be based upon the factors outlined in section 504 of the Marriage Act and upon a showing of a substantial change of the circumstances of the parties). The factors of which James complains are proper considerations under the provisions of the Marriage Act. Among other factors, in determining an appropriate maintenance award, the trial court is to consider (1) the income and property of each party; and (2) any impairment of the earning capacity of the party seeking maintenance due to that party's foregoing career opportunities during the marriage. 750 ILCS 5/504(a)(1), (a)(4) (West 1996). At the hearing, the trial court found that Patricia did not own a home and now lived with her parents. The trial court also noted that Patricia had received only 15% of James's pension during the dissolution proceeding. The trial court found that Patricia had been unable to accumulate her own pension because she had not pursued her teaching profession during the marriage and consequently had not attained decades of professional seniority. As both of these findings are supported by the record and were proper considerations under the Marriage Act (see *Lasota*, 125 Ill. App. 3d at 42), we do not believe that the trial court abused its discretion in making these findings (*Waldschmidt*, 241 Ill. App. 3d at 10).

■ James's fourth contention on appeal is that the trial court erred in failing to consider that Patricia deliberately refused to seek employment in compliance with the trial court's prior orders. James argues that Patricia ignored the trial court's October 11, 1996, and November 19, 1996, orders by failing to make any serious effort to obtain an available higher paying home economics teaching position and by failing to seek any employment outside of Lake County.

As noted above, in modification proceedings, courts allow the parties to present only new evidence arising since the last petition for modification. *Pedersen*, 237 Ill. App. 3d at 957. Therefore, regardless of whether Patricia had diligently sought employment in compliance with the trial court's earlier orders, the trial court was only to consider Patricia's efforts to secure employment since the last hearing. See *Pedersen*, 237 Ill. App. 3d at 957. Since the last hearing, Patricia had been substitute teaching and had gained her certification to teach elementary education. Patricia also was able to secure employment as a teacher for a parochial school and was earning a salary of $19,550. This was the only full-time position that she was offered. Patricia testified that she had sought higher paying public school jobs but had not received any offers. Patricia testified she had difficulty finding work as a home economics instructor because she had no experience teaching the subject.

Based on this evidence, we do not believe that the trial court abused its discretion in determining that Patricia had used reasonable diligence to find employment. Although James argues that Patricia should have been able to obtain a higher paying job at a public school, this is mere speculation; Patricia had only limited occupational skills, and she had not had the opportunity to cultivate these skills during the marriage. For these same reasons, we do not believe that the trial court's determination that Patricia had used reasonable diligence in seeking employment was against the manifest weight of the evidence.

■ James's fifth contention on appeal is that the trial court's finding that Patricia was still in need of maintenance was against the manifest weight of the evidence. Relying on *In re Marriage of Henzler*, 134 Ill. App. 3d 318 (1985), James argues that Patricia's maintenance should have terminated upon her gainful employment. James contends that since Patricia is now employed, she has been rehabilitated and is no longer in need of maintenance. James therefore concludes that the trial court erred in extending Patricia's maintenance award for an additional five years.

The employment of the spouse is only one factor to be considered in making decisions regarding maintenance. *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 830 (1992). Other factors to be considered include

the present and future earning capacity of each party, as well as the impairment of the earning capacity of the spouse seeking maintenance due to that party's foregoing career opportunities during the marriage. 750 ILCS 5/504(a)(3), (a)(4) (West 1996). The dependent former spouse is entitled to continue to live in some approximation to the standard of living established during the marriage unless the payor spouse's financial situation, the duration of the marriage, or other factors indicate otherwise. *In re Marriage of Thornton*, 89 Ill. App. 3d 1078, 1087 (1980).

As James correctly notes, the optimal goal of maintenance is for the dependent former spouse to become financially independent. See *In re Marriage of Lenkner*, 241 Ill. App. 3d 15, 25 (1993). However, under circumstances involving former spouses with grossly disparate earning potentials, this goal is often not achievable. *Lenkner*, 241 Ill. App. 3d at 25. Hence, "the goal of financial independence 'must be balanced against a realistic appraisal of the likelihood the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage.' " *Carpel*, 232 Ill. App. 3d at 828, quoting *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 378 (1991). This balancing test must be employed in the case of marriages in which the spouse seeking maintenance simply cannot match the earning power of her former husband. *Lenkner*, 241 Ill. App. 3d at 28.

At the close of the hearing, the trial court found that Patricia had been reasonably diligent in seeking employment. However, the trial court concluded that Patricia was still in need of maintenance even after attaining a full-time job. The trial court found that Patricia did not have her own pension, as she had not pursued her teaching profession during the marriage. The trial court further found that Patricia would never earn as much income as James. All of these findings are supported by the record. Despite James's contentions to the contrary, the trial court was not required to place greater emphasis on the fact that Patricia had attained employment than on either of these other factors. See *Carpel*, 232 Ill. App. 3d at 830. Moreover, we believe that the trial court's termination of Patricia's maintenance merely because she was now employed would have been contrary to the Marriage Act as well as being both unfair and inequitable. See *Lenkner*, 241 Ill. App. 3d at 25 ("It is inequitable upon dissolution to saddle the former homemaker with the burden of his or her reduced earning potential and to allow the wage-earning former spouse to continue in the advantageous position he or she reached through their joint efforts").

Additionally, we find James's reliance on *Henzler* unpersuasive. In *Henzler*, the reviewing court found that the rehabilitative goal of

maintenance had been achieved after the wife, who had been unemployed and had no outside income at the time of the dissolution, had obtained a college degree in accounting and had acquired a job with an investment firm. *Henzler*, 134 Ill. App. 3d at 321-23. The reviewing court also noted that the wife had bought a townhouse and the parties' daughter had since graduated from college and married. *Henzler*, 134 Ill. App. 3d at 321-22. We believe that such facts are clearly distinguishable from those present here where there is no similar evidence that Patricia has achieved rehabilitation such that she can support the lifestyle that she enjoyed during the marriage.

A maintenance award will not be set aside unless it is an abuse of discretion or against the manifest weight of the evidence. *In re Marriage of Hochleutner*, 260 Ill. App. 3d 684, 691 (1994). A judgment is against the manifest weight of the evidence only if it appears that a contrary conclusion is clearly evident. *In re Marriage of Ward*, 267 Ill. App. 3d 35, 41 (1994). For the reasons discussed above, we believe that the trial court's findings were supported by the record and were based on proper considerations under the Marriage Act. We therefore hold that the trial court's judgment was not against the manifest weight of the evidence.

■ James's final contention on appeal is that the trial court erred by failing to make the requisite findings as to the parties' standard of living at the time of the divorce. Although a trial court should make specific findings or otherwise make clear from the record the relevant factors it considered in rendering a decision under the Marriage Act, such findings are not mandatory. See *In re Marriage of Los*, 136 Ill. App. 3d 26, 29-30 (1985). Reviewing courts have consistently held that, where the record is adequate to provide a basis upon which to review the propriety of the decision and the decision is supported by the evidence, the reviewing court will not reverse solely because specific findings are lacking. *Los*, 136 Ill. App. 3d at 30; *Sostak v. Sostak*, 113 Ill. App. 3d 954, 958 (1983).

Although the trial court did not make a specific finding as to the parties' standard of living at the time of the dissolution, we believe that its comments at the maintenance review hearing indicate that it had considered this factor before ruling. Specifically, the trial court stated that it had considered the entire record before determining that Patricia's award of maintenance should continue. Our review of the record reveals that the parties' standard of living during the marriage was determined at the dissolution proceeding. Therefore, as the record is adequate to provide a basis upon which to review the trial court's decision, and as its decision is supported by the evidence, we do not believe that the trial court erred in failing to make a specific finding as to the parties' standard of living. See *Los*, 136 Ill. App. 3d at 30.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

THOMAS and RAPP, JJ., concur.