2022 IL App (2d) 210031-U
No. 2-21-0031
Order filed June 28, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* THE MARRIAGE OF CRAIG A. JOSEPHSON, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellee and Cross-Appellant, | ) ) ) | |
| v. | ) ) | No. 18-D-1438 |
| CYNTHIA M. BARRILE-JOSEPHSON, Respondent-Appellant and Cross-Appellee. | ) ) ) ) | Honorable Charles Smith, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court erred in failing to equitably distribute certain marital property, but it did not err in any other respect, including its valuation of the parties' personal property, the setting of maintenance, its refusal to require life insurance, and its award of attorney fees.

¶ 2    In December 2020, the circuit court of Lake County entered a judgment dissolving the marriage between the petitioner, Craig Josephson, and the respondent, Cynthia Barrile-Josephson. At the same time, it ordered Craig to contribute to Cynthia's attorney fees. Both parties now appeal certain aspects of the court's rulings.

¶ 3                                    I. BACKGROUND

¶ 4    Craig and Cynthia married in 1993.  At the time, Cynthia had two children from a previous marriage.  Another child was born to the parties during the marriage.  All of the children are now adults.

¶ 5    In 2018, Craig filed a petition for dissolution.  In October 2019, the parties entered an agreed order stating in part: "The parties stipulate that Cynthia shall receive guideline maintenance and that no income will be imputed to Cynthia for employment purposes in connection with her maintenance award."  Neither party ever filed a notice of intent to assert a claim of dissipation.  The four-day trial took place in August 2020.  The trial court delivered oral rulings in October and November 2020, and the final judgment of dissolution was entered in December.

¶ 6    As relevant here, the evidence at trial showed that, at the time of trial, Cynthia was 62 years old, had ongoing medical issues, and was last employed in 2015.  Craig was 51 years old, in good health, and owned a company through which he provided project management services to a medical device company.  Under the contract then in place, which ran through the end of 2020 and had been extended twice already, Craig was paid $7400 per week, or about $355,000 over 48 weeks of work, which the trial court found was a reasonable work-year.

¶ 7    Craig moved to California for work in August 2017.  As noted, he filed his dissolution petition in August 2018.  That same month, each party withdrew half of their joint account and transferred that sum (about $33,500) into accounts in their own names.

¶ 8    In December 2018, Cynthia moved for temporary support.  In February 2019, the trial court ordered Craig to pay the mortgage and other expenses of the marital home.  In April 2019, Craig was ordered to pay $1800 per month in temporary maintenance, along with certain medical bills and car-related expenses.

¶ 9     In February 2019, Craig began living in his girlfriend's home. For 15 months he paid no rent and did not contribute to the utilities, but in April 2020 he paid her a $9000 "security deposit" and began paying rent of $3000 per month plus utilities. The trial court found that the security deposit was a marital asset, as it had been paid using marital funds.

¶ 10    The marital home was sold in October 2019. Cynthia took many of the furnishings to her new home in Arkansas or stored them, at a total cost of $29,855.50. Craig received his golf ball collection and certain tools that he had taken from the home in 2018. Other personal property was disposed of. There were no proceeds from that disposition. The parties did not submit any professional estimates of the value of the personal property that each received or that was disposed of. Craig asserted that the personal property in Cynthia's possession was worth over $156,000, but he conceded that he had no training or experience in property valuation, and neither party submitted an objective basis for the property's fair market value at the time of trial. The trial court found that neither Craig's testimony regarding the value of the property nor Cynthia's testimony that the property had no value was credible. Noting that it had not received any other evidence regarding that value and that case law permitted it to use its own experience to determine the value of property, the trial court set the property's value at the amount that Cynthia had paid to transport and store it: $29,855.50.

¶ 11    The trial court awarded Cynthia indefinite maintenance in the guideline amount of $5,787.42 per month, retroactive to March 2020. In determining property distribution, it found that there was no nonmarital property. As to marital property, it found that both parties had contributed substantially to the marriage and that, due to the parties' different economic potentials moving forward, Cynthia should receive 55% of the marital property and Craig should receive 45%. It found that the parties' investment accounts, retirement accounts, home sale proceeds,

personal property, and airline miles should be divided in this 55/45 proportion as of the date of dissolution.

¶ 12     However, the trial court also stated that it viewed the parties' August 2018 split of their joint account as the moment when "they really ceased cohabiting and contributing to the marriage." It therefore denied Cynthia's request to apportion the checking account balances and debts accrued by each party after that point.  At the time of trial, Cynthia had $189.09 in her checking account and credit card debt of $14,451.66, which Cynthia testified arose from her living expenses that were not covered by her temporary maintenance.  Craig's checking account stood at $6,462.10 and his credit card debt was $3,603.10.

¶ 13     For the same reason, the trial court also declined to distribute as marital property the value of the new cars each party bought in 2019.  Cynthia's Toyota Prius cost $26,000; Cynthia used $11,000 of the money from her half of the joint account and financed the rest.  In addition, Craig was ordered to contribute $600 per month for Cynthia's car expenses beginning in June 2019. Craig's Mercedes Benz cost $56,088.055, and the amount paid by Craig was reduced by his $4500 trade-in of a marital car.  The trial court treated the trade-in value of the marital car as a marital asset and divided it in the same proportion as the rest of the marital estate.  However, as to the newer cars, it simply assigned each party their own vehicle, stating that the cars' value to the marital estate was zero.

¶ 14     During the trial, the parties had stipulated that Craig had invoiced his employer $29,400 for services rendered in the month or so before trial but had not yet received payment of those invoices.  Cynthia argued that these invoices should be treated as an asset of the marriage and therefore divided 55/45.  The trial court rejected this argument, viewing the invoices as simply the

mechanism for the payment of Craig's income, the appropriate portion of which would be paid to Cynthia as maintenance, and that to count the invoices as an asset would be double-dipping.

¶ 15    Craig's motion to reconsider certain aspects of the judgment was denied. Cynthia's appeal, and Craig's cross-appeal, followed.

¶ 16                                II. ANALYSIS

¶ 17                              A. Cynthia's Appeal

¶ 18    Cynthia raises three issues in her appeal: (1) whether the trial court erred in distributing the marital property, (2) whether the trial court erred by failing to determine the fair market value of the personal property, and (3) whether the trial court should have ordered Craig to maintain life insurance to secure his maintenance obligation.

¶ 19               1. Categorization and Distribution of Marital Property

¶ 20    A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if it is clear that the trial court has abused that discretion. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 161 (2005). A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 21    Cynthia notes that, although the trial court used the date of dissolution when assigning the value and ordering the distribution of most of the marital assets, it declined to do so when considering the value of the parties' cars, checking accounts, and debts. This, she contends, was error. We agree.

¶ 22    Generally, marital property is presumed to include all property—assets and debts— acquired by either spouse after the date of marriage and before the entry of a judgment of dissolution. 750 ILCS 5/503(b)(1) (West 2018). As directly relevant here, the marital property to

be distributed in just proportion includes debt incurred for living expenses between the date of separation and date of dissolution. *In re Marriage of Goforth*, 121 Ill. App. 3d 673, 683 (1984). The presumption that assets and debts acquired during the marriage are marital property can be overcome only by a showing of clear and convincing evidence that the property falls within one of the exceptions listed in section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(a) (West 2018)), and the burden to show such an exception is on the party claiming that property is nonmarital (*In re Marriage of Schmitt*, 391 Ill. App. 3d 1010, 1017 (2009)).

¶ 23    Here, none of the statutory exceptions applies. Although there is an exception for property acquired "after a judgment of legal separation," there was no such judgment entered here, and the parties' actions in dividing one joint account does not equate to such a judgment. Further, although the date of the breakdown of a marriage is relevant in assessing claims that parties dissipated marital assets, here neither party claimed dissipation. Thus, the statutory period laid out in section 503(b)—the date of the marriage through the date when the judgment of dissolution is entered—controls. Finally, we note that the trial court expressly found that there was no nonmarital property, logically implying that all of the assets and debts acquired before the judgment of dissolution were marital property to be divided in the proportions that the trial court found to be just, *i.e.*, 55/45. For all of these reasons, the trial court abused its discretion by committing a legal error (see *Olsen*, 2015 IL App (2d) 140267, ¶ 11) in failing to equitably apportion some of the parties' property acquired after August 2018 and before the date of dissolution.

¶ 24    Craig does not offer any meaningful argument otherwise. Instead, he argues that Cynthia forfeited her argument here by failing to raise it in her written closing argument. However, at that point Cynthia had no reason to know that the trial court would impose an artificial distinction as

to certain marital property acquired after August 2018. We therefore decline to find her argument forfeited. Craig also argues that, by asking for this property (or its value) to be distributed in the same proportions as the other marital property, Cynthia is somehow asking for more than her 55% share of the total marital property. That is not so, however. Cynthia simply asks that the property acquired after August 2018, including the cars, checking account balances, and debts, be distributed in accordance with the 55/45 distribution that the trial court determined was equitable, just as the other marital property was.

¶ 25    Cynthia raises one other argument regarding marital property, namely, that the trial court erred in failing to treat the $29,600—about one month's compensation—owed to Craig under unpaid invoices as a marital asset to be divided. The trial court declined to treat the invoices as assets on the ground that they were simply the method by which Craig collected his regular monthly income, the same income from which Cynthia's maintenance payments were paid, and that to divide the $29,600 as a marital asset would be "double-dipping."

¶ 26    The trial court's approach was erroneous. Under the Act, all of Craig's income earned during the marriage was a marital asset. 750 ILCS 5/503(b)(1) (West 2018). The invoices, which were for income Craig earned during the marriage, were in essence accounts receivable and thus were assets to be distributed. *In re Marriage of Schneider*, 214 Ill. 2d 152, 169 (2005); *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 973 (1992). Nor was it impermissible "double-dipping" to treat the invoices as an asset just because guidelines maintenance is based on, among other things, Craig's income. *Schneider*, 214 Ill. 2d at 170. Section 503(d)(10) of the Act expressly contemplates that property distributions may be made without regard to the payment of maintenance (see 750 ILCS 5/503(d)(10) (West 2018)), and the supreme court has held that income counted as a marital asset for property distribution purposes may also be counted when calculating

a support obligation (*In re Marriage of Dahm-Schell and Schell*, 2021 IL 126802, ¶ 60; see also *Schneider*, 214 Ill. 2d at 170). We therefore vacate the trial court's rulings as to the parties' cars, checking account balances, debts, and Craig's unpaid invoices, and remand for the trial court to determine the value of that marital property and distribute it in accordance with the 55/45 distribution of the other marital property.

¶ 27                    2. Valuation of the Parties' Personal Property

¶ 28    The next challenge Cynthia raises is to the trial court's valuation of the parties' personal property. She asserts that the trial court erroneously disregarded the fair market value standard required by the Act, and that it wrongly awarded Craig's personal property to him at no value. Neither contention has merit.

¶ 29    Cynthia first notes that section 503 of the Act requires a trial court to "make specific factual findings" as to the value of marital property, and provides that those findings should be based on the property's fair market value. 750 ILCS 5/503(a), (k) (West 2018). However, the trial court found that Craig's inexperienced and subjective estimation of the property's worth had no evidentiary value, and that Cynthia's testimony that the property had no value was not credible either. Thus, the parties failed to provide the trial court with competent evidence regarding the fair market value of the personal property in each party's possession. Cynthia argues that if there is no probative evidence of property's fair market value then a court must set that value at zero, but this is incorrect.

¶ 30    The valuation of marital property is a question of fact, and a reviewing court will not disturb the trial court's ruling on that factual question if it is within the range of competent evidence that was presented at trial. *In re Marriage of Schlichting*, 2014 IL App (2d) 140158, ¶ 74. "It is the parties' burden to present valuation evidence," however. *Id.* A trial court is hamstrung in setting

the fair market value of property when the parties have failed to meet this burden, and reviewing courts take this into account in determining whether a particular valuation is against the manifest weight of the evidence. See *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 64 (collecting cases for the proposition that parties who do not provide a trial court with competent and credible evidence of property's value cannot complain if the trial court fails to assign a value to the property). A reviewing court will not remand for an evidentiary hearing on value when a party had ample opportunity to present valuation evidence but simply failed to do so. *Id.*; *Schlichting*, 2014 IL App (2d) 140158, ¶ 74.

¶ 31 Here, lacking other credible or competent evidence, the trial court determined the fair market value of the personal property in Cynthia's possession based on the amount she paid to transport and store it—an amount supported by documentary evidence. This was not an abuse of discretion. When determining the market value of property, a factfinder may use logic and common experience in assessing the evidence. *Behrens v. W.S. Bills & Sons*, 5 Ill. App. 3d 567, 577 (1972). "Fair market value" is, as Cynthia notes, what a willing buyer would pay for the property. *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 737 (2002). Here, Cynthia willingly paid $29,855.50 to transport and store the property in her possession. Although this sum bore only an indirect relation to the actual value of the property, which could have been worth either less or more than that, it was some evidence that the property was worth at least that much to Cynthia, and this was evidence that the trial court could consider. The trial court did not abuse its discretion in setting the value of the property in Cynthia's possession at that figure.

¶ 32 Cynthia also complains of the trial court's assignment to Craig of the personal property in his possession without setting any value on that property. The specific property at issue is the furniture that Craig bought for his new home in California, using marital funds. Craig testified

about two purchases. The first was a purchase of a bed, mattress, and two dressers at Ikea. The only testimony about the value of that furniture was Craig's testimony that it cost about $2000 when he bought it (the date was not established by any evidence), and that he "assumed" that it was still worth between $1500 and $2000. However, there was no documentation or expert testimony supporting Craig's estimate, and the trial court expressly found Craig's estimates regarding the value of various furnishings to be of no probative value. Cynthia did not offer any other evidence of that furniture's value. Craig testified on cross-examination about a second purchase in March 2020 (about five months before trial) of a storage cabinet costing $1457, to be used in the home he shared with his girlfriend. This purchase was shown on a credit card statement offered into evidence.

¶ 33 In response to Cynthia's argument, Craig argues that the trial court was not required to assign a specific value to every item of marital property. He further argues that, if the trial court assigned value to his furniture, that value should have been offset by the $2500 Cynthia admitted receiving from selling the parties' motorcycles, which was not charged to her portion of the marital estate.

¶ 34 The trial court did not abuse its discretion by failing to assign a value to Craig's personal property in his possession. As to Craig's first furniture purchase, there was no competent evidence of its value, as the court had already found Craig's estimates on that point to be nonprobative and Cynthia offered no other evidence. When the parties fail to offer competent evidence of value, a trial court's failure to determine that value is not error. See *Hluska*, 2011 IL App (1st) 092636, ¶ 64. Nor did the trial court err in failing to assign a specific value for the storage cabinet and expressly charge that amount against Craig for distribution purposes. The Act does not require a court to place a specific value on each item of property, only to consider the total value of the

property about which evidence was introduced. *Id*. ¶ 61. Here, the trial court's comments show that it was aware of and weighed the evidence regarding the property in each party's possession, including the storage cabinet, the motorcycles, the golf ball collection, and several other items, in determining the overall value and just distribution of the marital property. Accordingly, we decline to disturb the trial court's award of the personal property in each party's possession. *Id*.

¶ 35                                      3. Life Insurance

¶ 36    The last issue raised by Cynthia's appeal is her contention that the trial court erred in denying without explanation her request that Craig's life be insured, either at his or her own expense, as security for her maintenance. As with any other ruling related to maintenance, we review this denial for abuse of discretion. *Schneider*, 214 Ill. 2d at 173. The party challenging the ruling bears the burden of showing such an abuse of discretion. *Id*.

¶ 37    Cynthia has not shown that the trial court abused its discretion in declining to order Craig to apply for and maintain life insurance to secure his maintenance obligation. Her only arguments are that the Act allows the imposition of a life-insurance requirement and that the trial court must not have adequately considered the "reasonableness" of her request for such an order because it did not state its reasons for denying it, and Cynthia was willing to bear the expense. But the mere fact that the Act allows a court to impose this requirement does not mean that a court should do so. Simply put, this argument does not show any abuse of the court's discretion to grant or deny a request for life insurance. Cynthia is also incorrect about the trial court's obligation to make specific findings. The section of the Act she cites says only that such findings must be made if a court is ordering non-guideline maintenance, and the case she cites, *In re Marriage of Connors*, 303 Ill. App. 3d 219, 230 (1999) actually holds the reverse, that specific findings are not mandatory

and reviewing courts will not reverse simply because such findings were not made. We therefore decline to disturb the trial court's denial of Cynthia's request for life insurance.

¶ 38                                    B. Craig's Cross-Appeal

¶ 39    In his cross-appeal, Craig raises five issues, asserting that the trial court erred in (1) its valuation of the personal property in Cynthia's possession, (2) its maintenance calculations, (3) its disproportionate distribution of marital assets in Cynthia's favor, (4) its treatment of his security deposit as a marital asset, and (5) its award of attorney fees to Cynthia.

¶ 40                    1. Value of Personal Property in Cynthia's Possession

¶ 41    Craig argues that the trial court should not have discounted his testimony about the value of the furnishings and other personal property in the marital home, because he had lived in the home as recently as a few years earlier and testified from memory about the value of the items in the home. However, Craig himself acknowledged that he had no training or experience in property valuation, supporting the trial court's finding that his testimony about the items' current fair market value lacked an objective basis. The trial court also noted that Craig could not identify with certainty which items were still in the home when Cynthia took certain items and disposed of the remainder, and he could not show where or when items went missing. Finally, the trial court could take into account the possibility that Craig was biased to assign higher values to the items in order to benefit himself, and it specifically found his testimony lacked credibility.

¶ 42    In a bench trial, the trial court sits as the trier of fact, hearing the witnesses and reviewing the direct presentation of the evidence, and it therefore is in the best position to make credibility determinations and factual findings. *In re Marriage of Matchen*, 372 Ill. App. 3d 937, 946 (2007). We therefore will not reverse the judgment in a bench trial unless it is against the manifest weight of the evidence; that is, unless "the opposite conclusion is clearly evident or the [factual] finding

is arbitrary, unreasonable, or not based in evidence." *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 544 (2007). Craig has not shown that this standard is met here. We reject his invitation to overturn the trial court's factual findings regarding the value of the marital property in Cynthia's possession.

¶ 43                                    2. Maintenance

¶ 44    Craig does not dispute that Cynthia should receive maintenance under the statutory guidelines. Instead, he argues that the trial court erred by failing to (a) take into account his high cost of living in California or (b) impute, as income to Cynthia, Social Security payments that she could receive if she elected to begin receiving benefits at the earliest possible moment. Neither of his arguments have merit.

¶ 45    As to whether his cost of living could be considered, Craig relies on section 504(a) of the Act, which includes the "needs of each party" as a relevant factor in certain maintenance determinations. See 750 ILCS 5/504(a) (West 2018). But that section applies only when a trial court is considering whether to grant maintenance at all, or if it decides to grant non-guideline maintenance. Neither situation exists here, where the parties expressly stipulated that Cynthia would receive guideline maintenance. Thus, as the trial court correctly held, Craig's cost of living was not a factor that could be considered in setting the amount of maintenance. Craig's argument that the stipulation to guideline maintenance should be set aside because it is contrary to public policy as expressed by section 504 of the Act is a misreading of the plain language of the statute.

¶ 46    As for the imputation of Social Security income to Cynthia, Craig's argument again lacks any legal foundation. A court may, when considering maintenance, impute income to a party if it finds that the party is "voluntarily unemployed, is attempting to evade a support obligation, or has unreasonably failed to take advantage of an employment opportunity." *In re Marriage of Ruvola*,

2017 IL App (2d) 160737, ¶ 39 (quoting *In re Parentage of M.M.*, 2015 IL App (2d) 140772, ¶ 44). Here, Cynthia is not voluntarily unemployed, nor is there any evidence that she is attempting to avoid any support obligation. Further, insofar as her decision not to take early Social Security, a decision that would reduce her monthly benefits by $598 for the rest of her life, could be viewed as failing to take advantage of an opportunity for income, the trial court found that this decision was reasonable. Craig has offered no authority to the contrary. We also note that the trial court appropriately ordered a review of maintenance when Cynthia attains her full retirement age of 66.5 years old, at which time regular Social Security benefits may be imputed to her. We find no error in the trial court's maintenance calculations.

¶ 47                    3. Distribution of Marital Property

¶ 48    Craig next argues that the trial court should not have awarded Cynthia 55% of the marital estate and instead should have divided it equally between the parties. He asserts that, as he contributed the lion's share of the income that supported the family after the birth of the parties' son, his larger contribution should have resulted in a division that, at a minimum, did not "disadvantage" him. In response, Cynthia points out that she contributed financially as much or more than Craig before their son was born, helped support the family while Craig pursued his education, and managed the household by herself while Craig traveled frequently for work.

¶ 49    Here, the trial court's comments show that it considered all of the statutory factors, including each party's contribution to the marriage. It expressly found that each party had "contributed greatly to the marriage, both financially and emotionally." However, the trial court also found that Cynthia was 62 years old and unable to work due to health issues, while Craig was 11 years younger, was in good health, and had favorable future employment prospects. The trial court also took note of relevant precedent including *In re Marriage of Heroy*, 385 Ill. App. 3d 640,

662 (2008), which similarly involved a lengthy marriage and disparate earning capacity, where the court found that a disproportionate distribution was appropriate. Balancing all of the statutory factors, the trial court determined that Cynthia should receive 55% of the marital estate.

¶ 50    A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if it is clear that the trial court has abused that discretion. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 161 (2005). Although section 503(d) of the Act requires a trial court to divide marital property "in just proportions" (750 ILCS 5/503(d) (West 2018)), it is well-settled that this command does not mandate an equal split but rather the most equitable distribution in light of the statutory factors. See *In re Civil Union of Hamlin & Vasconcellos*, 2015 IL App (2d) 140231, ¶ 61 ("An equitable property division does not necessarily mean an equal distribution; a party may receive a greater share of the property if the relevant factors warrant the result."); *Heroy*, 385 Ill. App. 3d at 661 (an unequal division of marital property may be appropriate depending on the circumstances of each case). Here, ample evidence supported the trial court's determination of the appropriate division of the marital estate, and Craig has not shown that its decision was an abuse of discretion.

¶ 51                    4. Security Deposit as Marital Asset

¶ 52    In April 2020, a few months before trial, Craig paid his girlfriend a $9000 security deposit using marital funds. At trial, Craig testified that, barring damage to the property, he expected that that security deposit would be returned to him. The trial court ruled that the security deposit was a marital asset and awarded 55% of it, or $4950, to Cynthia. Craig asserts that this was error.

¶ 53    Craig first argues that the security deposit was simply accumulated income, out of which he was paying temporary maintenance, and not a marital asset. But, as we have discussed, under the Act, all of Craig's income earned during the marriage was a marital asset. 750 ILCS

5/503(b)(1) (West 2018). As the security deposit was "purchased" with marital funds prior to a judgment of dissolution, it was also a marital asset. Further, to the extent that Craig is arguing that it would be impermissible "double-counting" to treat his income as marital for property distribution purposes and nevertheless count that income when calculating his support obligation, the supreme court has rejected this argument. See *In re Marriage of Dahm-Schell and Schell*, 2021 IL 126802, ¶ 60; see also *Schneider*, 214 Ill. 2d at 170.

¶ 54    Craig also argues that the security deposit should not be considered a marital asset because he does not currently have possession of it, and its value could be reduced by the time it is returned to him. Neither of these facts are determinative. A party need not have immediate possession of an asset for it to be considered marital property. If Craig had used marital funds to buy a motorcycle that he then loaned to a friend, the motorcycle would still be a marital asset, the value of which could be charged against Craig. As for the value of the security deposit, the trial court did not err in finding that, at the time of dissolution, it was worth $9000. That is what Craig paid for it, and although Craig testified that its value could be reduced if he damaged his home, there was no evidence that he had yet done so. Like any other intangible asset whose ultimate value may fluctuate, *e.g.*, stock, the security deposit was properly valued at the time of dissolution. Indeed, the security deposit can be viewed as an investment in housing, comparable to any other investment. Craig has not shown that the trial court erred in treating the security deposit as a marital asset.

¶ 55                                            5. Attorney Fees

¶ 56    The final issue raised in Craig's cross-appeal concerns the trial court's ruling that he should contribute $20,000 to Cynthia's legal fees. A trial court's decision to award attorney fees "will not be disturbed absent an abuse of discretion." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13.

As noted above, a trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *Olsen*, 2015 IL App (2d) 140267, ¶ 11. Further, to the extent that the fee award could be seen as a type of sanction, the standard of review is the same. See *Shimanovsky v. General Motors,* 181 Ill. 2d 112, 120 (1998) (the decision to impose sanctions "is within the discretion of the trial court and, thus, only a clear abuse of discretion justifies reversal"); see also *Kubian v. Labinsky*, 178 Ill. App. 3d 191, 196 (1988) (an abuse of discretion occurs "where the record shows that the party's conduct was not unreasonable or where the sanction itself is not just").

¶ 57    Cynthia's fee petition stated that she had already paid a substantial amount for attorney fees and asked that Craig be ordered to pay $100,000 toward her unpaid balance. As Craig owed his own attorneys $82,504, such an order would result in Craig paying a total of $182,504, or 57% of the fees incurred by both parties. Craig asked that Cynthia's petition be denied entirely.

¶ 58    The trial court's ruling was set out in a detailed seven-page memorandum order. As directed by sections 508(a) and 503(j) of the Act (750 ILCS 5/508(a), 503(j) (West 2018)), the trial court considered and made findings on the factors listed in section 503(d) and 504(a) (*id.* §§ 503(d), 504(a)). The trial court also relied on *Heroy*, 2017 IL 120205, ¶¶ 19, 21, in which the supreme court held that the overarching issue in ordering a contribution toward attorney fees is whether, after considering the relevant statutory factors, the court reasonably finds that requiring a party to pay the entirety of the fees would undermine his or her financial stability, and that that standard could be met if paying fees would require a party to invade his or her retirement account.

¶ 59    The trial court found that many of the statutory factors relating to the parties' disparate economic circumstances favored an award of fees. However, the trial court also found that the

total fees expended in the case were higher than they should have been given the relative simplicity of the case. It found that both parties' litigiousness had contributed to the high fees, and that Cynthia's attorneys had incurred three-quarters of the total fees. However, it also recognized that Craig had "ignored settlement overtures, failed to appear for a deposition, and failed to deposit pay checks into his account," which required Cynthia's attorneys to incur additional expenses.

¶ 60    The trial court found that, as Cynthia had received 55% of the marital estate, she had the ability to pay her own fees. However, to do so, she would have to invade her retirement assets. It went on to note that, under *Heroy* and other Illinois case law, requiring such a reduction in retirement assets was disfavored. Ultimately, the trial court concluded that, although requiring Craig to pay the $100,000 that Cynthia sought would not be equitable, "considering the holding in *Heroy*, *** the lack of liquidity of Cynthia's assets and considering Craig's gamesmanship," it was appropriate to order Craig to contribute $20,000 toward Cynthia's attorney fees.

¶ 61    Craig has not challenged the reasonableness of Cynthia's attorneys' hourly fees or the time expended by them. Rather, he contends that the trial court awarded fees based solely on Craig's purported misconduct that drove up litigation costs. Although he acknowledges that courts may take such misconduct into account in ordering contribution to attorney fees (see *In re Marriage of Cotton*, 103 Ill. 2d 346, 361 (1984)), he argues that there is no evidence of that misconduct in the record. He also argues that in any event the $20,000 amount of the award was not justified because it was not related to any resulting increase in fees from that misconduct. Cynthia responds that we should not even consider these arguments because Craig failed to attach the portions of the record—the exhibits to her fee petition—that would be necessary for us to review the trial court's determination that Craig unreasonably drove up the parties' legal costs, and the amount of fees attributable to that misconduct.

¶ 62    In any appeal, it is the responsibility of the appellant to supply a complete record sufficient to permit review of the issues it wishes to raise on appeal. *People v. Carter*, 2015 IL 117709, ¶ 19. This requirement applies equally to cross-appellants such as Craig. In the absence of a complete record, we must presume that the order entered by the trial court conformed to the law and had a sufficient factual basis. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1008 (2007) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Any doubts that arise from the incompleteness of the record must be resolved against the appellant. *Carter*, 2015 IL 117709, ¶ 19.

¶ 63    Here, the trial court's award of attorney fees was based in part on its finding that Craig's conduct unreasonably drove up Cynthia's litigation expenses. During the hearing on fees, Cynthia pointed to her exhibits to show that Craig's conduct had that effect, and to support her contention that almost $20,000 in fees were attributable to just three instances (among many) of that conduct. Given that the trial court clearly considered those exhibits in reaching its decision, Craig's failure to include the exhibits in the record on appeal prevents us from conducting an informed review of its decision. *Id.*; *Foutch*, 99 Ill. 2d at 391-92 (1984). As we have no basis for concluding that the trial court abused its discretion in ordering Craig to contribute $20,000 toward Cynthia's attorney fees, we reject Craig's argument.

¶ 64                                   III. CONCLUSION

¶ 65    For the reasons stated, the judgment of the circuit court of Lake County is affirmed in part and vacated in part. The trial court's rulings regarding the parties' cars, checking account balances, debts, and Craig's unpaid invoices in the amount of $29,600, are vacated. All of the other portions of the judgment, including its determination that the marital estate should be distributed 55/45, are affirmed, as is its order requiring Craig to pay $20,000 of attorney fees. The cause is remanded for further proceedings to determine and distribute the value of the marital property as to which

the judgment was vacated, *i.e.*, the parties' cars, checking account balances, debts, and Craig's unpaid invoices, in accordance with this decision.

¶ 66    Affirmed in part and vacated in part.