2023 IL App (2d) 220259
No. 2-22-0259
Opinion filed February 22, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* M.M., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| | ) | No. 20-JA-360 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | |
| Appellee, v. Shakeia H. and Malik M., | ) | Honorable |
| Respondents (Jeannie C., Intervenor- | ) | Jorge L. Ortiz, |
| Appellant)). | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1 In May 2022, the Department of Children and Family Services (DCFS) sought to remove the minor, M.M., from the only home he had ever known, the home of his foster mother, the intervenor Jeannie C. After Jeannie brought motions to intervene and seeking a hearing on the necessity and appropriateness of such a move, the trial court initially stayed the removal to allow briefing and a hearing on the issues. However, it subsequently lifted that stay before that hearing, apparently believing that it lacked the power to prevent M.M.'s removal by continuing the stay. Jeannie appeals the trial court's decision to lift the stay. We vacate the lifting of the stay and remand the cause for further proceedings.

¶ 2                                   I. BACKGROUND

¶ 3    M.M. was born on December 28, 2020. The brother of two sisters who had been removed from their mother, Shakeia H., he was also removed and was placed in the home of his mother's aunt (Jeannie) when he was two days old. His sisters were also placed there. In May 2021, he was adjudicated neglected and made a ward of the court, and DCFS was granted temporary guardianship. Throughout these months, the reports from his caseworker described Jeannie's care of M.M. in very positive terms. The permanency goal was for the children to return home.

¶ 4    On July 22, 2021, M.M. and his sisters were returned to their mother's care, but that did not last long. On July 30, they were removed from Shakeia's home and returned to foster care. M.M. was returned to Jeannie. For reasons that are not clear from the record, Jeannie did not resume her care of M.M.'s sisters, who were split up. The State asserts that Jeannie was asked to resume caring for both sisters but refused. Jeannie contends that she offered to resume caring for one sister (Marie, who has the same father as M.M.) but the agency denied her request and instead asked her to resume caring for the other sister. Jeannie declined that request. Marie was placed instead with her paternal grandmother.

¶ 5    In February 2022, the trial court conducted a dispositional hearing and once again appointed DCFS as M.M.'s temporary guardian. The first permanency hearing was set for August 2022. The reports regarding Jeannie's care of M.M. continued to be uniformly positive.

¶ 6    In May 2022, the agency responsible for the children's care informed Jeannie that it planned to change M.M.'s placement, moving him to his paternal grandmother's home to reunite him with his sister Marie. Jeannie requested a clinical placement review, a procedure in which outside experts evaluate the best interests of a child with respect to various decisions regarding his care and custody. Although the agency initially indicated that it would arrange such a review, it reconsidered and denied the request on the ground that regulations did not require such reviews

when children were moved to reunite them with siblings. On May 27, 2022, the agency sent a letter saying that M.M.'s placement in Jeannie's home would be terminated the following business day, May 31, 2022. The letter not only cited the goal of reuniting M.M. with Marie but also alleged that Jeannie had provided less than optimal care for M.M. by leaving him with extended family members on a regular basis.

¶ 7     On May 31, 2022, Jeannie filed two emergency motions in M.M.'s case. The first sought leave to intervene in the proceedings; the second sought an immediate permanency planning hearing, a report of the guardian, and a finding that M.M.'s proposed new placement was not necessary and appropriate. Shakeia also filed an emergency motion seeking the same relief as Jeannie's second motion.

¶ 8     At the hearing that same day, M.M.'s caseworker, Ms. Spillane, testified that the agency did not have any concerns regarding Jeannie's care of M.M. and that the removal was being sought solely to reunite M.M. with his sister Marie:

> "THE COURT: Okay, this matter was scheduled before me August 2nd, for permanency hearing. And is there any reason why this minor was being moved now?
>
> MS. SPILLANE: To be with his sibling.
>
> THE COURT: Is there any other particular reason why?
>
> MS. SPILLANE: To be with his siblings, siblings are our main goal.
>
> * * *
>
> THE COURT: *** Ms. Spillane, is there any reason why this child can't remain in his current placement until we resolve these motions?
>
> MS. SPILLANE: There is no reason, your Honor."

The trial court found that the matter was not an emergency. It set a briefing schedule on the motions filed by Jeannie and Shakeia and a hearing date of June 14, 2022. With the parties' agreement, it stayed the removal of M.M. from Jeannie's home "until the matter [*sic*] heard by the Court as long as the placement remains safe and appropriate."

¶ 9    M.M.'s guardian *ad litem* (GAL) and DCFS each filed responses opposing Jeannie's motion to intervene. No one filed any response to Jeannie's and Shakeia's motions for an immediate permanency planning hearing, for a report from the guardian, and for a finding that the proposed new placement for M.M. was not necessary and appropriate.

¶ 10    At the hearing on June 14, the trial court granted Jeannie's motion to intervene, finding that the basis for the proposed removal was the reunification of siblings, not any concerns about the safety or appropriateness of Jeannie's home. It further noted that Jeannie had the right to participate in the proceedings as a party.

¶ 11    Asked how M.M. was doing, Ms. Spillane stated that he was "doing well" and that the agency previously agreed that he could stay with Jeannie "while we work all this out." The agency's goal was simply to reunite the siblings.

¶ 12    The State then asked whether the court was finding that DCFS did not have the right to place M.M. wherever it believed was appropriate. The court said that DCFS was M.M.'s temporary guardian and had the right to determine his placement. Shakeia argued that, while the court could not order a specific placement, it could order services to be provided and thus could order a clinical placement review as she and Jeannie had requested. Although the law did not require such a review where sibling reunification was the reason for a child's removal from a current placement, there was no bar to a review if the court ordered it. Jeannie joined the request, noting that she was "very much willing and interested in" Marie being placed in her home, allowing the siblings to be

together without M.M.'s removal. Jeannie also noted that the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-5(2)(c) (West 2020)) gave the court the authority to review a planned placement to determine whether it was necessary and appropriate, and that she had asked for a best interests hearing on that issue as well.

¶ 13    Appearing surprised, the trial court stated that the motions seeking the clinical placement review, a report from the guardian, and permanency planning were not set for hearing that day. Although the previous order setting the briefing schedule and hearing date had not distinguished between the pending motions, the trial court stated that it would have to set a separate briefing schedule and hearing on those motions. The pending motions would be heard at the August permanency hearing.

¶ 14    Shakeia then asked that the trial court continue its stay of any removal of M.M. from Jeannie's home until the permanency hearing. The State objected, arguing that DCFS still had the right to remove M.M. and place him elsewhere if it felt that was appropriate. The trial court denied the request to continue the stay, saying that it would not order "injunctive relief." Jeannie offered further argument about the trial court's statutory authority to stay removal. Separately, Ms. Spillane noted that Shakeia was making good progress and that, if the children were returned to their mother on the hearing date, all of the issues about M.M.'s transfer to a different foster home would be moot. The trial court nevertheless declined to extend the stay. When asked by Jeannie whether that meant that the agency could proceed with removing M.M. even before the hearing, the trial court said,

> "You know what, ma'am, theoretically, they could. Okay? Theoretically, they could. But I hope that doesn't happen. I hope that doesn't happen, okay, but *I can't prevent that right now*." (Emphasis added.)

The written order entered on June 15, 2022, stated that "[t]he prior court order staying the minor's placement is no longer in effect and DCFS has the right to determine the appropriate placement for the minor." The agency removed M.M. from Jeannie's home the next day.

¶ 15    Jeannie filed an emergency motion seeking a finding that the new placement for M.M. was not necessary and appropriate because of safety concerns relating to the paramour of M.M.'s paternal grandmother, in whose home M.M. had been placed.  At the June 27 hearing on that motion, the trial court determined that it was not an emergency and continued it for briefing and hearing on the permanency hearing date. In determining that the matter was not an emergency, the trial court heard argument and testimony from the nonmovants but did not permit Jeannie's witnesses to be heard.

¶ 16    Jeannie appealed from the trial court's orders of June 15 and June 27, 2022, arguing that the trial court abused its discretion in denying her request to continue the stay of M.M.'s removal and denying her the opportunity to present witnesses regarding the appropriateness and safety of M.M.'s new placement.  On the date set for permanency review and for hearing all pending motions, the trial court stated that it could not address any of those matters because of the pending appeal. It nevertheless entered an order finding M.M.'s new placement to be necessary and appropriate.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, Jeannie's arguments address only the trial court's decision to lift the stay on M.M.'s removal without first hearing evidence about his best interests, as memorialized in the order dated June 15, 2022 (Order). We therefore confine our analysis to the Order.

¶ 19                                A. Jurisdiction

¶ 20    Before turning to the parties' substantive arguments, we must address our jurisdiction to hear this appeal. The State argues that we must dismiss this appeal because we lack jurisdiction. Alternatively, it contends that the appeal should be dismissed as moot. Neither contention has merit.

¶ 21    Jeannie's notice of appeal cited Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) as the basis for our appellate jurisdiction. That rule permits an appeal to be taken "from an interlocutory order *** granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." *Id.* The order being appealed—the trial court's decision to lift its stay of M.M.'s removal from Jeannie's home—fits squarely within that rule. A stay is an injunction (*Custer v. Cerro Flow Products, Inc.*, 2019 IL App (5th) 190285, ¶ 21), and lifting a stay is the same as "dissolving *** an injunction" (Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017)).

¶ 22    The State argues that, "to the extent that" the Order could be viewed as dissolving a temporary restraining order (TRO), Jeannie did not comply with the expedited briefing schedule applicable to such appeals under Rule 307(d). But the State makes no effort to show why the trial court's May 2022 order should be viewed as a TRO instead of a preliminary injunction. We thus reject this argument and find that Jeannie's appeal was proper under Rule 307(a)(1). The State also argues that Jeannie's requests for extensions of time in filing her appellate briefs and her failure to seek a stay of the Order in this court were contrary to the spirit of Rule 307(d), but again that provision does not govern this appeal.

¶ 23    Finally, the State argues that the appeal should be dismissed as moot. "An appeal is moot if '*** events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief.' " *In re Marriage of Eckersall*, 2015 IL 117922, ¶ 9 (quoting *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005)). The State notes that, in September

2022, the trial court found that M.M.'s placement in his new home was necessary and appropriate. However, the State provides no legal authority or even a reasoned explanation of why this finding would prevent us from granting the relief that Jeannie requests, which includes the reversal or vacating of the Order if warranted. Where a party does not offer any argument or meaningful authority in support of that argument, the argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. We find the State's bare assertion of mootness forfeited for lack of support, and we decline to consider it. Having found that we have jurisdiction over this appeal, we turn to the issues raised.

¶ 24                          B. Trial Court Authority to Stay Removal

¶ 25     Jeannie argues that the trial court erred by dissolving its stay of M.M.'s removal pending a hearing on the matters raised by Jeannie's motions. She notes that, under section 2-28(2.5) of the Act (705 ILCS 405/2-28(2.5) (West 2020)), a trial court is empowered to hear evidence and make a determination that the "planned placement is not necessary or appropriate to facilitate achievement of the permanency goal." She contends that the trial court erred in lifting the stay and allowing M.M.'s removal to a new placement before conducting a hearing and making such a determination. The State responds that there is no authority for Jeannie's argument and that parties do not have the right to dictate the timeline of when the trial court must determine the necessity and appropriateness of a planned placement.

¶ 26     These issues require us to interpret various provisions of the Act, a process that is subject to certain familiar principles. In construing a statute, our task is to "ascertain and give effect to the intent of the legislature." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. The best indicator of the legislature's intent is the plain language of the statute. *Id.* We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the

express legislative intent. *In re Michael D.*, 2015 IL 119178, ¶ 9. "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007). "A court may also consider the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another." *Sperl v. Henry*, 2018 IL 123132, ¶ 23.

¶ 27     To the extent that our analysis is based on statutory interpretation, our review is *de novo*. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 22. However, to the extent that the issue is whether, under the law as correctly interpreted, the trial court erred in lifting the stay, our standard of review is abuse of discretion. *Save Our Illinois Land v. Illinois Commerce Comm'n*, 2022 IL App (4th) 210008, ¶ 147. A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 28     By May 2022, M.M. had been in Jeannie's home for almost his entire young life. Further, the record reflects that Jeannie provided excellent care to M.M. Nevertheless, the agency decided to remove him in an effort to reunify him with his sister Marie, and it declined to provide the clinical placement review requested by Jeannie and instead told her that it would proceed with immediate removal. Presented with several motions by both Jeannie and Shakeia seeking to halt this removal, the trial court reasonably entered a stay of the removal in order to permit briefing and a hearing on the issues raised by the motions.

¶ 29     At the June 2022 hearing on those motions, the trial court correctly ruled that, as a foster parent with whom M.M. had lived for over a year, Jeannie had an absolute right to intervene in the proceedings once the agency sought to remove M.M. from her home.

"If a foster parent has had the minor *** in his or her home for more than one year *** and if the minor's placement is being terminated from that foster parent's home, that foster parent shall have standing and intervenor status except *** where [DCFS] *** has removed the minor from the foster parent because of a reasonable belief that *** continuing in the residence or care of the foster parent will jeopardize the child's health or safety or presents an imminent risk of harm to the minor's life." 705 ILCS 405/1-5(2)(c) (West 2020).

Although the agency initially suggested that they had some concerns about Jeannie's care of M.M., in the May 2022 hearing Ms. Spillane confirmed that none of these concerns rose to the level of jeopardizing M.M.'s health or safety and that the reason the agency sought to remove him from Jeannie's care was simply to reunite him with his sister Marie. The trial court specifically found that sibling reunification was the reason for removal. Thus, the trial court properly granted Jeannie's motion to intervene. *Id.*; see also *In re R.J.*, 2022 IL App (1st) 211542, ¶ 70.

¶ 30       The error made by the trial court that day arises from other rulings reflected in the Order. The trial court's May 2022 order clearly set a briefing schedule and a June hearing date for all of the pending motions. When told that the nonmovants had filed responses only to the motion to intervene, however, the court declined to hear the other motions and instead granted additional time for the nonmovants to file responses, setting a hearing date two months away. While that decision may have been reasonable, the trial court erred by lifting the stay on removal prior to the hearing date.

¶ 31       The decision to grant or deny a stay is generally a matter within the trial court's discretion. *Save Our Illinois Land*, 2022 IL App (4th) 210008, ¶ 147. Here, however, nothing in the record justified the trial court's decision to allow DCFS to remove M.M. from the only home he had ever known—a home that posed no threat to his safety or well-being—before even hearing concerns

about that removal that were properly brought before the court by his foster parent. No party argued that there was any need for M.M. to be removed before the hearing date, nor did the trial court find that any such need existed.

¶ 32    Rather, the trial court apparently believed that it lacked the authority to continue the stay it had previously entered. This was error. Although injunctive in nature, a stay is not necessarily extraordinary relief. Rather, it is a tool that a court may use to control its docket and provide for the orderly consideration of the issues before it. *Lisk v. Lisk*, 2020 IL App (4th) 190364, ¶ 23. A preliminary injunction, such as a stay, is properly granted to preserve the status quo until the issues can be resolved. *Smith v. The Vanguard Group, Inc.*, 2019 IL 123264, ¶ 10. Thus, it was well within the trial court's power to extend its stay on the removal of M.M. until the issues raised by Jeannie's and Shakeia's motions were resolved.

¶ 33    The State argues that courts are not empowered to direct the specific placement of a child who is under the temporary guardianship of DCFS. A stay of removal is not the same as directing the placement of a child, however. A stay simply continues a child's placement—a placement that DCFS itself originally directed. Thus, it is well within a trial court's authority to stay removal from a previous placement.

¶ 34    The trial court here told Jeannie that it could not prevent DCFS from removing M.M., but in fact it did have the power to do so by continuing the stay. The trial court's failure to recognize its own inherent authority to continue the stay was legal error. "Our supreme court has ruled that reversible error can exist when a circuit court has refused to exercise discretion 'in the erroneous belief that it has no discretion as to the question presented.' " *In re Estate of Walter*, 2023 IL App (1st) 211600, ¶ 70 (quoting *People v. Queen*, 56 Ill. 2d 560, 565 (1974)); see also *Bjork v. O'Meara*, 2013 IL 114044, ¶ 31. And, as noted above, legal error meets the standard for abuse of

discretion. *Olsen*, 2015 IL App (2d) 140267, ¶ 11 (a trial court abuses its discretion when its ruling rests on an error of law). The trial court committed legal error and abused its discretion by failing to exercise that discretion to stay M.M.'s removal from a safe and appropriate home that was the only home he had ever known.

¶ 35    Jeannie urges us to go farther and to hold that, to effectuate the purpose of section 2-28(2.5) of the Act (705 ILCS 405/2-28(2.5) (West 2020)), a trial court must always hold a best interests hearing before a child's placement can be changed, if a party with standing (such as Jeannie, here) contests the necessity and appropriateness of the planned new placement. We agree that such an approach would be consistent with the authority given to trial courts under section 2-28(2.5) to oversee placements to ensure that those placements are necessary and appropriate, as well as in the child's best interests. See *id.*; *In re A.P.*, 2012 IL 113875, ¶ 18 (in any proceeding under the Act, "the paramount consideration is the best interests of the child"); *In re Q.P.*, 2022 IL App (1st) 220354, ¶ 27 (section 2-28(2.5) empowers a court to reject a planned placement as unnecessary or inappropriate). We further agree that in this case, where there were no safety concerns, the trial court should have stayed M.M.'s removal and conducted a full hearing on Jeannie's and Shakeia's properly noticed motions prior to lifting that stay. However, as we are reversing the trial court's refusal to enter a stay on other grounds, we need not decide whether the Act requires such a hearing in all cases, and we decline to do so.

¶ 36                                  III. CONCLUSION

¶ 37    For the reasons stated, that portion of the Order that lifted the stay of M.M.'s removal from Jeannie's home is vacated. The other portions of the Order, and the order dated June 27, 2022, have not been considered and no ruling is issued as to them. The cause is remanded for further proceedings consistent with this decision.

¶ 38     Order vacated in part and remanded.

---

**_In re M.M._, 2023 IL App (2d) 220259**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-JA-360; the Hon. Jorge L. Ortiz, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kate Gordon Eller, of Flynn Gordon, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |